JOURNAL ENTRY and OPINION
{¶ 1} The State of Ohio appeals from the judgment of the Cuyahoga County Court of Common Pleas, which granted Aaron Stagger's motion to suppress. On appeal, the State assigns the following error for our review:
"I. The trial court erred in granting appellee's motion tosuppress because the officers had reasonable suspicion ofcriminal activity based on specific and articulable facts."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.
 {¶ 3} On August 13, 2004, the Cuyahoga County Grand Jury indicted Aaron Stagger for carrying a concealed weapon. Stagger pled not guilty at his arraignment and subsequently filed a motion to suppress. On November 29, 2004, the hearing on the motion to suppress commenced.
 SUPPRESSION HEARING {¶ 4} At the suppression hearing, Patrolman Joseph Sedlak of the Cleveland Police Department testified that on July 18, 2004, at approximately 1:30 A.M., he and Patrolman Kevin Grady were working the "bar detail," which involves checking area bars that have made complaints about drug activity, fighting, and drinking in their parking lots. During the course of this routine patrol, he noticed a car in the parking lot across the street from a bar located at East 142nd and Harvard Avenue in Cleveland, Ohio. There were four male occupants in the car. After shining the spotlight into the car, he observed that all the individuals were wearing sweatshirts with the hoods up, and this made him suspicious. The driver started the car, put the car in reverse, and started to back up, but Patrolman Grady pulled the police cruiser behind the car to prevent an exit.
 {¶ 5} Patrolman Sedlak testified that he approached the passenger side of the vehicle with his gun at his side, while Patrolman Grady approached the driver's side of the vehicle. Patrolman Grady asked the driver for his license. The driver told him he did not have a driver's license, but produced a state identification card. During this time, Patrolman Sedlak observed the passengers in the back of the car make furtive movements. At gunpoint, he ordered the passengers to keep their hands where they were visible. However, Patrolman Sedlak stated that Staggers, who was seated in the back, kept moving his left hand out of view, despite repeated instructions to the contrary.
 {¶ 6} Patrolman Grady asked the driver to exit the vehicle and after patting him down, recovered a .38 caliber revolver. Patrolman Sedlak observed Staggers again move his left hand from view, which prompted him to ask Staggers to step out of the vehicle. Patrolman Sedlak immediately handcuffed Staggers after he exited the vehicle. He then proceeded to pat down Staggers, and as a result, recovered a .25 caliber handgun.
 {¶ 7} On cross examination, Patrolman Sedlak testified as follows:
"Q. The only activity that you saw before your partner and youblocked this car from reversing and moving or leaving was thefact that you saw four individuals in a car with hoodedsweatshirts; am I correct?
 A Yes.[1]
* * *
Q. Now, you indicated in response to one of the Prosecutor'squestion that this individual area, this area, was in your wordsan area where there was alcohol violations, fighting, and drugviolations; am I correct?
 A That is correct.
 Q You did not see before you stopped these individuals anydrug activity, did you?
 A No.
 Q You did not see any fighting of these four individualsbefore you stopped them, did you?
 A No.
 Q You did not see any alcohol activity before you stoppedthese individuals?
 A No.
 Q So the basis for the stop, then, is four men — you didn'teven know if they were men, did you?
 A No, I did not.
 Q You didn't even know their ages, did you?
 A No, I did not.
 Q So it could have been grandma?
 A Could have been.
 Q Could have been grandpa. All you saw were four individualssitting in a car with hooded sweatshirts; am I correct?
 A Yes.
 Q And based upon that, you stopped and engaged in aninvestigation?
 A We stopped to see what they were doing, correct. It wasn'tan investigation.
 Q They weren't free to move or leave, were they?
 A No.
 Q The freedom of movement had been restricted, am I correct?
 A I guess, yeah, you could put it that way."[2]
 {¶ 8} At the conclusion of the hearing, the trial court granted Staggers' motion to suppress. The State now appeals.
 MOTION TO SUPPRESS {¶ 9} In its sole assigned error, the State argues the trial court erred in granting Staggers' motion to suppress, because the officers had reasonable suspicion of criminal activity based on specific and articulable facts. We disagree.
 {¶ 10} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[3] Thus, the credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[4] Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[5]
 {¶ 11} The Fourth Amendment to the Constitution of the United States and Section 14, Article, I, of the Constitution of Ohio, prohibit unreasonable searches of persons and seizure of their property. Evidence obtained by the State in violation of that prohibition must be suppressed from use by the State in its criminal prosecution of the person from whom it was seized. The purpose of suppression is not to vindicate the rights of that accused person, who may very well have engaged in illegal conduct, but to deter the State from such acts in the future.[6] The rule is also applied to protect the integrity of the court and its proceedings.[7]
 {¶ 12} Searches and seizures conducted without the authority of a prior judicial warrant are unreasonable per se, and therefore illegal.[8] The State may, nevertheless, prove that its warrantless search was not unreasonable, and thus not illegal, if the State demonstrates that its officer acted according to one of several exceptions to the warrant requirement when the search and seizure was performed.[9] If the State meets that burden, suppression of the evidence seized is not proper.
 {¶ 13} A defendant who asks a court to suppress evidence because the officer seized it in the course of a warrantless search has the initial burden to prove that the search was warrantless. In practice, the State usually concedes the fact. The burden of going forward then passes to the State, which must present evidence sufficient to establish the existence of an exception to the warrant requirement that makes the seizure reasonable.[10]
 {¶ 14} One of the most frequently cited exceptions to the warrant requirement, is the exception announced in Terry v.Ohio.[11] Under Terry, a police officer who reasonably suspects that some specific criminal misconduct is afoot may briefly detain and question the person suspected, though the officer lacks a judicial warrant to do so. If the officer also reasonably believes that the suspect is armed and dangerous, the officer may perform a pat-down search of the suspect's outer garments and an examination of other areas within the suspect's reach in which weapons that could be turned on the officer might be concealed. This search may not be for the purpose of locating evidence of the crime the officer suspects, but if it produces evidence of crime the officer may seize it, and it is not subject to suppression in the State's resulting criminal prosecution.
 {¶ 15} It should be noted that the level of suspicion required for a Terry stop is less demanding than that required to establish probable cause.[12] Probable cause has been defined as "a fair probability that contraband or evidence of a crime will be found."[13]
 {¶ 16} In order to justify an investigative stop underTerry, supra, a police officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.[14] The Fourth Amendment requires a minimal level of objective justification for making the stop.[15]
 {¶ 17} The United States Supreme Court has held since an effort to define "reasonable and/or articulable suspicion" creates unnecessary difficulty, that when evaluating the validity of a stop such as this, a court must consider "the totality of the circumstances — the whole picture."[16] Further, the totality of the circumstances must be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.[17]
 {¶ 18} A review of the record indicates that at the suppression hearing the State proffered two lines of reasoning why the stop was reasonable. First, the State suggested the officers had a right to detain Staggers and his companions, because they were sitting in a car at 1:30 A.M., in a high drug area, opposite a bar where they had received numerous complaints and had made numerous arrests. However, we are not persuaded. Patrolman Sedlak admitted that when he shone the spotlight into the car, he did not observe the occupants of the car engaging in drug, alcohol, or any other illegal activity. Rather, he became suspicious solely because the individuals were dressed in hooded sweatshirts in the month of July. Here, without more than unusual attire, the intrusion was not justified.
 {¶ 19} The second line of reasoning the State proffered was that of flight. The State argued the officers were justified in detaining the occupants of the vehicle because in response to the police shining the spotlight in the vehicle, they made an attempt to leave. Again, we are not persuaded. The following exchange took place on cross examination:
"Q. Did this car try to speed away?
 A. No.
 Q Did it go at excess speed?
 A No.
 Q Did it try to go another way?
 A There wasn't another way.
 Q So all it was trying to do was leave the parking lot?
 A That's correct."[18]
 {¶ 20} However, the State cites State v. Taylor,[19]
to support the notion that one does not have to reach a high speed for one's departure from a place where one expects to be arrested or detained to be considered flight. Taylor, also states that the significance of flight lies in the intent of the actor to avoid arrest or detention, the speed of the withdrawal from the scene can be a factor in divining the actor's intent.[20]
 {¶ 21} Here, unlike Taylor, the record is devoid of any indication that the driver of the car was attempting to evade the police. Courts have routinely held that evasive behavior is a pertinent factor in determining reasonable suspicion, and headlong flight is the consummate act of evasion.[21]
Patrolman Sedlak testified that when he shone the spotlight into the car, the driver simply put the car in reverse and started to back up. This is not illegal behavior per se, and under the totality of the circumstances is not indicative of flight.
 {¶ 22} Under the above facts and applicable law, we decline to find that the detaining officers observed circumstances reasonably indicating criminal behavior. Therefore, we conclude that the State has failed to point to specific, articulable facts which would lead a reasonable person to suspect that criminal activity was afoot when they encountered Staggers and his companions. Consequently, the evidence seized is fruit from a poisonous tree. Accordingly, we overrule the State's sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., and Sweeney, J., Concur.
[1] Tr. at 23.
[2] Tr. at 25-25.
[3] See State v. Robinson (1994), 98 Ohio App.3d 560; Statev. Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th
Dist. No. 90CA7.
[4] See State v. Mills (1992), 62 Ohio St.3d 357; State v.Fanning (1982), 1 Ohio St.3d 19.
[5] See State v. Harris (1994), 98 Ohio App.3d 543.
[6] United States v. Calandra (1974), 414 U.S. 338; Stone v.Powell (1976), 428 U.S. 465.
[7] United States v. Payner (1980), 447 U.S. 727.
[8] Katz v. United States (1967), 389 U.S. 347.
[9] Id.; Coolidge v. New Hampshire (1971), 403 U.S. 443.
[10] Xenia v. Wallace (1988), 37 Ohio St.3d 216.
[11] (1968), 392 U.S. 1.
[12] United States v. Montoya de Hernandez (1985),473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381.
[13] Illinois v. Gates (1983), 462 U.S. 213, 238,103 S.Ct. 2317, 76 L.Ed.2d 527.
[14] 392 U.S. at 27.
[15] INS v. Delgado (1984), 466 U.S. 210, 217,104 S.Ct. 1758, 1763, 80 L.Ed.2d 247.
[16] United States v. Cortez (1981), 449 U.S. 411, 417,101 S.Ct. 690, 695, 66 L.Ed.2d 621.
[17] State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
[18] Tr. at 31.
[19] (Feb. 25, 2005), 2nd Dist. No. 20665.
[20] Id. at 20.
[21] Illinois v. Wardlow (2000), 528 U.S. 119, 120 S.Ct. 673,145 L.Ed. 2d 570; Adams v. Williams (1972), 407 U.S. 143,92 S.Ct. 1921, 32 L.Ed.2d 612.