[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Harrison*, Slip Opinion No. 2021-Ohio-4465.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-4465

THE STATE OF OHIO, APPELLEE, *v*. HARRISON, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Harrison*, Slip Opinion No. 2021-Ohio-4465.]

*Criminal law—Arrest warrant—Fourth Amendment—Crim.R. 4—Court of appeals' judgment affirmed and cause remanded to the trial court.*

(No. 2020-1117—Submitted June 29, 2021—Decided December 22, 2021.)

APPEAL from the Court of Appeals for Logan County,

No. 8-19-48, 2020-Ohio-3920.

_____

**DONNELLY, J., announcing the judgment of the court.**

{¶ 1} This appeal asks us to decide whether it was unlawful to arrest appellant, Kandale Harrison, on an arrest warrant for which probable cause to arrest had been found but which had not been signed by an authorized court officer. We conclude that if (1) a court officer documents a finding of probable cause to believe that an identified criminal offense was committed by the defendant named in a sworn criminal complaint and accompanying affidavit and (2) an arrest warrant is

attached to and expressly incorporates the complaint, then a valid arrest warrant has been issued under Crim.R. 4(A)(1) and 4(C)(1). The absence of a signature on the arrest warrant itself does not negate the warrant's validity. An arrest predicated on that warrant therefore does not violate either Crim.R. 4 or the Fourth Amendment to the United States Constitution. We accordingly affirm the court of appeals' judgment, albeit for a different reason than the one expressed in its opinion, and we remand this cause to the court of common pleas for further proceedings.

## I. FACTS

{¶ 2} On February 2, 2018, Brent Joseph, a detective with the Logan County Sheriff's Office assigned to the county's Joint Drug Task Force, supervised a controlled drug buy of cocaine by a confidential informant ("CI") from Harrison. Detective Joseph listened to recorded telephone calls between Harrison and the CI regarding their arrangements to meet for the buy. The CI was also outfitted with a recording device that enabled Detective Joseph to listen to the February 2 transaction. After the buy, the CI provided the drug, which was confirmed to be cocaine, to Detective Joseph and stated that it was sold to him by Harrison.

{¶ 3} On February 13, Detective Joseph executed an affidavit labeled Exhibit "1" that recited the foregoing facts. That same day, he appeared before a Logan County Common Pleas Court judge and executed an application for the installation and use of an electronic tracking device on the motor vehicle that Harrison had used during the February 2 controlled drug buy. *See* Crim.R. 41(A)(2). The judge granted the tracking application that day, and a tracking device was placed surreptitiously on Harrison's vehicle. The Logan County Joint Drug Task Force monitored the vehicle's movements in furtherance of their investigation.

{¶ 4} On February 27, Detective Joseph appeared before Karla Stevens, clerk of the Bellefontaine Municipal Court, to swear out a one-page complaint against Harrison for trafficking in cocaine in violation of R.C. 2925.03(A)(1) and

2925.03(C)(4)(a) in connection with the February 2 controlled drug buy. *See* Crim.R. 4(A)(1). A blank warrant authorizing the arrest of "the Defendant * * * named in the foregoing complaint" was attached to the complaint. The detective's two-page affidavit identified as Exhibit "1" and dated February 13, reciting the facts of the controlled drug buy, was also attached to the complaint and blank arrest warrant.

{¶ 5} Stevens testified that after she signed the complaint sworn to by Detective Joseph, she delivered the complaint, a blank arrest warrant, and the affidavit marked Exhibit "1" to municipal-court Judge Ann Beck. Judge Beck reviewed the paperwork and placed a stamp on the complaint's cover page that stated, "Hearing Held 2/27/2018" and "Probable Cause Found." She placed her initials "AB" on the line designated "Judge." The arrest warrant attached to the complaint, however, was not signed or dated by anyone. Stevens acknowledged that it had been the court's practice not to sign or enter arrest warrants into databases unless and until the arrest warrant had been executed to avoid the risk of prematurely divulging information that could compromise an ongoing undercover criminal investigation. Detective Joseph subsequently picked up the paperwork reflecting the judge's finding of probable cause to arrest and the blank arrest warrant.

{¶ 6} On March 5, Detective Joseph saw Harrison's vehicle traveling from the Columbus area to Logan County through GPS tracking. After obtaining visual confirmation of Harrison driving the vehicle and trailing the vehicle for a period of time, Detective Joseph instructed Joe Layman, who was then a patrol deputy, to initiate a traffic stop of Harrison's vehicle so that Detective Joseph could execute the arrest warrant. As Deputy Layman approached the driver's side of Harrison's stopped vehicle, Detective Joseph approached the passenger's side. When Deputy Layman had Harrison step out of the vehicle, Detective Joseph joined them on the driver's side and informed Harrison that he was under arrest. Harrison was taken

into custody without incident. A search of the vehicle incident to the arrest resulted in the seizure of incriminating evidence.

**{¶ 7}** On March 6, after learning of Harrison's March 5 arrest, a Bellefontaine Municipal Court deputy clerk formally filed and docketed Detective Joseph's sworn complaint with the Exhibit "1" affidavit. The deputy clerk also signed and dated the attached arrest warrant.

**{¶ 8}** On April 10, Harrison was indicted on multiple felony counts in the Logan County Court of Common Pleas. Harrison moved to suppress the evidence seized in the search incident to arrest on the ground that the arrest warrant was unsigned at the time of his arrest. The trial court granted Harrison's motion to suppress on the basis that the unsigned arrest warrant was not a valid warrant. The trial court further rejected the state's reliance on the good-faith exception to the exclusionary rule, determining that the unsigned arrest warrant was so facially defective that the arresting officer could not reasonably have presumed it was valid.

**{¶ 9}** The court of appeals reversed the trial court's judgment after first determining that it did not need to decide whether the unsigned arrest warrant was valid. 2020-Ohio-3920, ¶ 27. The court of appeals ruled that under the good-faith exception to the exclusionary rule, it was objectively reasonable for Detective Joseph to believe that he had a valid arrest warrant. *Id*. at ¶ 32-33.

**{¶ 10}** We accepted jurisdiction over Harrison's discretionary appeal, 160 Ohio St.3d 1459, 2020-Ohio-5332, 157 N.E.3d 788, which raises two propositions of law for our review:

> 1. An arrest warrant that is not signed by a judge, magistrate, clerk of court, or officer of the court designated by the judge, does not comply with Criminal Rule 4.

2. A law enforcement officer's reliance on an arrest warrant that is not signed pursuant [to] Criminal Rule 4 does not qualify for the good faith exception to the exclusionary rule.

## II. ANALYSIS

{¶ 11} We address the propositions of law separately, being mindful that appellate review of a ruling on a motion to suppress presents a mixed question of fact and law. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Questions of law are reviewed de novo without deference to the lower court's legal conclusions. *Id.*

### A. The Validity of the Unsigned Arrest Warrant

{¶ 12} The Fourth Amendment to the United States Constitution proscribes unreasonable searches and seizures, declaring that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Consistent with that constitutional command, Crim.R. 4 sets forth the process and procedures generally applicable to the issuance of arrest warrants under Ohio law.

{¶ 13} Harrison contends that the unsigned arrest warrant did not comply with Crim.R. 4 and was therefore invalid. By implication, he argues that the trial court correctly determined that his arrest violated the Fourth Amendment and that the evidence seized incident to his arrest was properly suppressed by application of the exclusionary rule. Before considering the merits of these contentions, however, we must first address the state's alternative argument that no arrest warrant was required under the circumstances of this case.

*1. The State's Alternative Argument for a Warrantless Arrest*

{¶ 14} The state argues that even if the arrest warrant at issue here was invalid, Detective Joseph could have made a warrantless arrest pursuant to R.C. 2935.03 and 2935.04.[1] A warrantless arrest that is based on probable cause and occurs in a public place does not violate the Fourth Amendment. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66, citing *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Although the state has maintained consistently that there was probable cause to arrest Harrison, it conceded at oral argument that it did not argue in the lower courts that no arrest warrant was required and that Harrison could have been subject to a warrantless arrest under this line of authority.

{¶ 15} "In accordance with the general rule of appellate procedure this court will ordinarily refuse to consider questions which were not raised in the courts below." *Drain v. Kosydar*, 54 Ohio St.2d 49, 55, 374 N.E.2d 1253 (1978), fn. 4. *See also Hospitality Motor Inns, Inc. v. Gillespie*, 66 Ohio St.2d 206, 208, 421 N.E.2d 134 (1981), fn. 2. We decline to consider the state's alternative argument in this case for three reasons.

{¶ 16} First, the state's failure to raise the warrantless-arrest argument in the trial court deprived Harrison of the opportunity to oppose that contention and develop a record that could be reviewed on appeal. *See Giordenello v. United States*, 357 U.S. 480, 487-488, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) (declining to consider government's belated warrantless-arrest argument because petitioner had no opportunity to contest that argument at trial).

---

1. Certain designated law-enforcement officers shall arrest and detain, until a warrant can be obtained, persons who are found violating a law of this state, R.C. 2935.03(A)(1), and persons who committed a felony drug-abuse offense, R.C. 2935.03(B)(1). Under R.C. 2935.04, any person without a warrant may arrest another person whom he has reasonable cause to believe is guilty of having committed a felony and may detain that person until a warrant can be obtained.

**{¶ 17}** Second, the state's entreaty that we address whether a warrantless arrest could have been made effectively asks us to render an advisory opinion in this case. We do not indulge in advisory opinions on issues that are not properly before us. *See State ex rel. Davis v. Public Emps. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, 899 N.E.2d 975, ¶ 43; *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18.

**{¶ 18}** Third, and perhaps most fundamentally, this case arises from an arrest that occurred after Detective Joseph applied for—and by all accounts received what he believed to be—a warrant to arrest Harrison. It is the validity of that warrant that is at issue here. We will therefore decide this case based on what did occur, rather than on what could have occurred under alternative facts.

*2. Compliance with Crim.R. 4*

**{¶ 19}** Before we address the processes and procedures that govern the issuance of warrants under Crim.R. 4, we must briefly review the rule that sets those processes and procedures in motion—Crim.R. 3. Crim.R. 3 defines a complaint as a written statement of the essential facts constituting the offense charged; it must include the numerical designation of the applicable statute or ordinance and be made upon oath before any person authorized by law to administer oaths.

**{¶ 20}** The issuance of an arrest warrant upon a sworn criminal complaint is governed by Crim.R. 4(A)(1). *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 14. *Compare State ex rel. Boylen v. Harmon*, 107 Ohio St.3d 370, 2006-Ohio-7, 839 N.E.2d 934, ¶ 10 ("Crim.R. 4(A) applies when affidavits are filed with a valid criminal complaint under Crim.R. 3. R.C. 2935.10 governs the procedure when only affidavits have been filed under R.C. 2935.09.") Crim.R. 4(A)(1) provides in part as follows:

> If it appears from the complaint, or from an affidavit or affidavits
> filed with the complaint, that there is probable cause to believe that

an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant, or a summons in lieu of a warrant, shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.

As we said in *Hoffman* at ¶ 14,

[T]he purpose of a complaint or affidavit is to set forth sufficient information to enable the decisionmaker to personally determine from the facts whether it is likely that an offense has been committed by the named individual. A mere conclusory statement that the person whose arrest is sought has committed a crime is insufficient to justify a finding of probable cause. It is also not enough that probable cause may later be determined to exist. A neutral and detached magistrate or other person authorized under Crim.R. 4(A)(1) must make a probable-cause determination before an arrest warrant can be issued. *See Coolidge* [*v. New Hampshire*, 403 U.S. 443, 450-451, 91 S.Ct. 2022, 29 L.E.2d 564 (1971)].

{¶ 21} Thus, under Crim.R. 4(A)(1), an arrest warrant (or a summons in lieu of a warrant) shall issue if a neutral and detached judge, magistrate, clerk of court, or officer of the court designated by the judge finds from the sworn complaint and any supporting affidavits that there is probable cause to believe that the defendant identified in the complaint committed an identified criminal offense. *Compare State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965 (person acting in dual capacity as county deputy sheriff and municipal court deputy clerk in same county was not neutral and detached magistrate capable of determining whether

probable cause existed to issue arrest warrant) *with Shadwick v. Tampa*, 407 U.S. 345, 348-350, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972) (upholding arrest warrants issued by municipal-court clerks, observing that the United States Constitution's warrant requirements turn not on the label of the issuing party but on whether the issuing officer was (1) neutral and independent from the investigation and prosecution of crime and (2) capable of determining whether probable cause existed for the requested arrest or search).

{¶ 22} In this case, there is no dispute that Detective Joseph appeared before Stevens on February 27, 2018, at which time he signed and she notarized a one-page complaint charging Harrison with the offense of trafficking in cocaine on February 2 in violation of R.C. 2925.03(A)(1) and 2925.03(C)(4)(a). There is also no dispute that a one-page blank arrest warrant was attached to the complaint. And there is no dispute that Detective Joseph's two-page February 13 affidavit labeled Exhibit "1" that recited the facts of the February 2 controlled drug buy was also attached to the complaint.

{¶ 23} Further, there is no dispute that Stevens delivered this paperwork to Judge Beck for her consideration. There is also no dispute that when Judge Beck returned the paperwork to Stevens that same day, she had dated and initialed the complaint and stamped it "Hearing Held" and "Probable Cause Found." Finally, there is no dispute that the one-page arrest warrant attached to the complaint remained blank, with no date or signature.

{¶ 24} Harrison acknowledged at oral argument that the sworn complaint and accompanying affidavit established probable cause to believe that he had committed the offense of trafficking in cocaine on February 2 in violation of R.C. 2925.03(A)(1) and 2925.03(C)(4)(a). And he does not dispute that Judge Beck, a neutral and detached judge, found that probable cause existed on February 27.

{¶ 25} Harrison maintains, however, that the arrest warrant itself was facially defective and void ab initio because it was not signed. To address that

issue, we turn to the minimum requirements for a valid arrest warrant under Ohio law.

{¶ 26} Crim.R. 4(C)(1) provides:

The warrant shall contain the name of the defendant or, if that is unknown, any name or description by which the defendant can be identified with reasonable certainty, a description of the offense charged in the complaint, whether the warrant is being issued before the defendant has appeared or was scheduled to appear, and the numerical designation of the applicable statute or ordinance. A copy of the complaint shall be attached to the warrant.

Notably, Crim.R. 4(C)(1) does not expressly require that the warrant be signed by a judge or any other authorized court officer.[2]

{¶ 27} The arrest warrant at issue in this case contained the following language:

**<u>WARRANT</u>**

**TO ANY LAW ENFORCEMENT OFFICER:** You are hereby commanded to arrest the Defendant, named in the foregoing complaint, and bring said Defendant without unnecessary delay before the Bellefontaine Municipal Court or any other Court of Record having jurisdiction of the offense, to be dealt with according to law.

DATED: _____          _____
                                                    Clerk/Deputy Clerk

---

2. By contrast, Fed.R.Crim.P. 4(b)(1)(D) states expressly that an arrest warrant must "be signed by a judge."

{¶ 28} The trial court noted that the warrant contained language incorporating by reference the attached complaint and thus satisfied the requirements of Crim.R. 4(C)(1). To the extent that the arrest warrant attached and incorporated by reference Detective Joseph's February 27 sworn complaint and the complaint contained Harrison's name, described the charged offense as trafficking in cocaine, indicated that he was to be taken into immediate custody, and identified the state statutes he was charged with violating, Harrison's arrest warrant contained all of the elements that Crim.R. 4(C)(1) prescribes. *See generally Groh v. Ramirez,* 540 U.S. 551, 557-558, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (warrant may be construed with reference to a supporting document "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant").

{¶ 29} Harrison nevertheless insists that the arrest warrant was void ab initio because it was not signed by a judge. He relies on our decision in *State v. Williams*, 57 Ohio St.3d 24, 565 N.E.2d 563 (1991), in which we held that a search warrant is void ab initio if it is not signed by a judge prior to the search. Harrison's reliance on that case is misplaced.

{¶ 30} We note initially that as addressed in *Williams*, Ohio law vests only judges with the authority to issue search warrants. *See* Crim.R. 41(A) (search warrant or tracking-device warrant may be issued by a judge of a court of record); Crim.R. 41(C)(2) (judge shall issue search warrant if satisfied that probable cause exists); R.C. 2933.21 (judge of a court of record may, within his jurisdiction, issue search warrants); R.C. 2933.24(A) (search warrant shall require executing officer to search the place or person named or described for the property and bring the person before judge or magistrate). *See also State v. Commins*, 12th Dist. Nos. CA2009-06-004 and CA2009-06-005, 2009-Ohio-6415, ¶ 19-23 (search warrant issued by magistrate was void). By contrast, Ohio law allows arrest warrants to be

issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge. *See* Crim.R. 4(A)(1).

{¶ 31} We further note that no procedural rule or statute expressly requires the judge's signature on a search warrant. *See Williams* at 28 (Holmes, J., dissenting) ("There is no 'signature requirement' for search warrants provided by statute in Ohio, by Constitution or by rule, and such signature must be considered as only ministerial in nature").[3] Nevertheless, this court has held that "[t]he signing of a search warrant is the only identifiable objective manifestation of a judge's subjective intent to issue a search warrant. * * * Without having the signature of the authorizing magistrate[4] affixed to the warrant, a citizen is left to guess whether such a warrant has validity." *Id.* at 25. Indeed, "the signature requirement provides both protection and assurance to property owners faced with the threat of a search of their property, in that they may review the document and determine whether or not they are required to allow officers to conduct the search." *Id.* at 26.

{¶ 32} Like a search warrant in which the breadth of the search and seizure is limited by the terms expressly approved by the authorizing judge, an arrest warrant limits the scope of the seizure by naming (or adequately describing) the person charged with committing an identified criminal offense in either the warrant or an attached complaint. But unlike a search warrant in which prompt judicial review and relief may not be immediately available, an arrest and detention set the judicial machinery in motion, allowing for disputes as to the lawfulness of the arrest to be addressed promptly through preliminary judicial proceedings.

---

3. While R.C. 2933.25 does set forth an acceptable *form* of a search warrant that includes the name and perhaps space for the authorizing judge's signature, that statute does not purport to set forth the substantive *contents* necessary for a search warrant, which are set forth in R.C. 2933.24.

4. *See Commins*, 2009-Ohio-6415, at ¶ 21-23 (explaining that the definition of "magistrate" when used in relation to the issuance of a search warrant under R.C. Chapter 2933 "refers to elected officials who act in a judicial capacity * * * not to an appointed official" as defined by Crim.R. 2(F)).

{¶ 33} We readily agree that a signature on search warrants and arrest warrants is "the best device for safeguarding an individual's rights." *See Williams*, 57 Ohio St.3d at 26, 565 N.E.2d 563. But our decision in *Hoffman* recognizes that the primary if not fundamental safeguard of an arrest warrant is that probable cause must be *found* before the warrant may be issued. *See Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, at ¶ 14.

{¶ 34} In the instant case, there is no doubt that probable cause to arrest Harrison was found before the arrest warrant was issued. The record here contains an affirmative indication that Judge Beck found probable cause to issue an arrest warrant on February 27, using a blank arrest warrant that expressly incorporated an attached sworn complaint. Though far from ideal, the judge's affirmative documentation on the complaint that probable cause was found sufficed to confirm that the court issued the arrest warrant based on that finding.

{¶ 35} We therefore conclude that the arrest warrant at issue here adequately complied with the requirements of Crim.R. 4 notwithstanding the absence of a court official's signature on the warrant. But finding that the arrest warrant did not violate Crim.R. 4 does not end our inquiry, for the trial court determined that the absence of a signature on the warrant made this an unreasonable seizure in violation of the Fourth Amendment. We turn now to consider that issue.

*3. Compliance with the Fourth Amendment*

{¶ 36} As indicated previously, the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." But nothing in the text of the Fourth Amendment expressly conditions the validity of a warrant on it being signed. *See United States v. Cruz*, 774 F.3d 1278, 1285 (10th Cir.2014); *United States v. Lyons*, 740 F.3d 702, 724-727 (1st Cir.2014). And more specifically, "[n]othing in the Fourth Amendment requires a judge's signature on an arrest warrant." *Aaron v. United States*, M.D.Fla. Nos. 3:15-cv-

629-J-34JBT and 3:12-cr-170-J-34JBT, 2018 U.S.Dist. LEXIS 95885, *25 (June 7, 2018). In *Lyons* at 726, the United States Court of Appeals for the First Circuit declined to find that the lack of a signature on the search warrant was a reason for suppression under the Fourth Amendment "[g]iven the clear and contemporaneous evidence that the state justice made a proper probable cause determination and approved the issuance of a warrant for execution."

{¶ 37} Indeed, the only substantive requirements that the Fourth Amendment imposes before a warrant shall issue is that the warrant must (1) be "based upon probable cause," (2) be "supported by Oath or affirmation," (3) "particularly describ[e] the place to be searched," and (4) "particularly describ[e] * * * the persons or things to be seized." *See Groh*, 540 U.S. at 557, 124 S.Ct. 1284, 157 L.Ed.2d 1068. And as we have noted in this case, there is no doubt that Judge Beck found probable cause, that her finding was based on Detective Joseph's sworn complaint and accompanying affidavit, and that the arrest warrant and incorporated complaint particularly described the person to be seized. Measured against the Fourth Amendment, Harrison's arrest warrant complied with its requirements.

{¶ 38} For its part, the trial court concluded that an arrest warrant that is unsigned has not been "issued" within the meaning of the Fourth Amendment. Acknowledging that Crim.R. 4(A) does not require that an arrest warrant be signed, the court reasoned:

> [C]ommon sense and experience would lead to the conclusion that without the signature of an authorized person there is no warrant to be issued. The finding of probable cause to issue a warrant is not the functional equivalent of the issuance of the completed document. * * * As a judgment is not complete without the signature of the

14

judge, so is a warrant not complete without the signature of the judge
or other authorized signer.

*State v. Harrison*, Logan C.P. No. CR 08 03 0091 (Oct. 3, 2019).  But by its terms,
the Fourth Amendment prescribes the substantive conditions that are necessary
before a warrant shall "issue."  It does not prescribe the specific form of the warrant.

{¶ 39} Moreover, the verb "issue" does not connote any specific technical
requirements.  Black's Law Dictionary defines "issue" in part as "[t]o send out or
distribute officially."  *Black's Law Dictionary* 996 (11th Ed.2019).  Webster's
Dictionary similarly defines "issue" as "to appear or become available through
being officially put forth or distributed or granted or proclaimed or promulgated"
or "to go forth by authority."  *Webster's Third International Dictionary* 1201
(2002).  In short, a warrant shall issue, i.e., be officially sent out, so long as the
substantive requirements of the Fourth Amendment have been satisfied.  And a
signature on the warrant itself is not a constitutional requirement.

{¶ 40} Having said that, we emphatically echo the note of caution expressed
by the United States Court of Appeals for the First Circuit:

> The presence of a signature provides easy and reliable proof that a
> warrant was in fact issued.  An officer who observes that a warrant
> is unsigned might not be assured that it was actually issued, and
> might execute it at his peril if he has no other good reason to believe
> the warrant was issued.  And when, as here, the warrant is not
> signed, proof of issuance becomes more involved and less certain.
> In many circumstances, the magistrate or judge may not recall
> reviewing or issuing the warrant by the time his belated signature is
> sought.  For these reasons, we are confident that police will continue
> to have ample incentive to secure signatures.

*Lyons*, 740 F.3d at 726.  To be direct, a signature on the warrant is strongly advised even it is if not constitutionally required.

{¶ 41} We further acknowledge that this is not a case in which the absence of a signature on the warrant was the result of an inadvertent oversight.  Instead, the absence of a signature on this arrest warrant was the result of a deliberate if not misguided court practice intended to delay making the issuance of the warrant known or a matter of public record.  But the desire to maintain the confidentiality of the warrant so as not to compromise the integrity of the criminal investigation or the CI's identity was a matter that the court could have adequately addressed through better internal court protocols.  It did not require the withholding of an authorized signature on the arrest warrant that needlessly exposed the warrant to doubts over its validity and years of contested litigation.[5]

{¶ 42} Notwithstanding the absence of a signature on Harrison's arrest warrant, we are nevertheless convinced from our review of the record that the requirements of Crim.R. 4(A)(1) and 4(C)(1) and the Fourth Amendment were satisfied in this case.  The record shows that the judge documented her finding of probable cause to believe that an identified criminal offense had been committed by the defendant named in the sworn criminal complaint and accompanying affidavit and that the complaint was attached to and expressly incorporated into the arrest warrant.  Consequently, a valid arrest warrant was issued under Crim.R. 4(A)(1) and 4(C)(1) and the absence of a signature on the arrest warrant itself did not negate the warrant's validity.  The arrest predicated on that warrant and the

---

5. We are somewhat mollified by the state's representation that the municipal court changed its policy, now signing the warrants when they are issued but keeping them out of the court's computer system.  We strongly encourage courts throughout the state of Ohio to review their practices and make any necessary changes that will avoid the uncertainty generated by unsigned warrants.

search incident to arrest therefore did not violate either Crim.R. 4 or the Fourth Amendment to the United States Constitution.

## B. The Good-Faith Exception to the Exclusionary Rule

{¶ 43} Contesting the specific basis for the court of appeals' judgment, Harrison's second proposition of law contends that a law-enforcement officer's reliance on an arrest warrant that is not signed pursuant to Crim.R. 4 does not qualify for the good-faith exception to the exclusionary rule. The court of appeals side-stepped whether the unsigned arrest warrant was valid and instead applied the good-faith exception, seemingly on the unstated supposition that the arrest warrant was invalid. We disagree with the appellate court's approach to this issue, as it essentially puts the cart before the horse.

{¶ 44} The "exclusionary rule" is a judicially created sanction designed to compel respect for and deter violations of the Fourth Amendment. *See Davis v. United States*, 564 U.S. 229, 236-237, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011); *Mapp v. Ohio*, 367 U.S. 643, 656, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The "good-faith exception" to this rule is likewise a judicially created exception that renders the exclusionary rule inapplicable when, for instance, law-enforcement officers act in objectively reasonable good-faith reliance on a search warrant that is later determined to be invalid, *see, e.g.*, *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), or on an arrest warrant that has been recalled or quashed or is otherwise no longer active, *see, e.g.*, *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995).

{¶ 45} In this case, however, we do not have an invalid or otherwise inactive arrest warrant, and Harrison's arrest pursuant to the warrant did not violate the Fourth Amendment. Because there was no legal basis to apply the exclusionary rule to the evidence seized at the time of Harrison's lawful arrest, there was no legal

basis to consider application of the good-faith exception to that rule. Further, because we are not confronted with an invalid arrest warrant in this case, we need not decide whether it would be objectively reasonable for law-enforcement officers to rely on an *invalid* arrest warrant, and we express no opinion on that issue here.

## III. CONCLUSION

{¶ 46} The judgment of the court of appeals is affirmed, albeit for a different reason than was expressed in its opinion, and the cause is remanded to the court of common pleas for further proceedings.

Judgment affirmed
and cause remanded.

O'CONNOR, C.J., and FISCHER, J., concur.

STEWART, J., concurs in judgment only.

BRUNNER, J., concurs in judgment only, with an opinion.

DEWINE, J., dissents, with an opinion joined by KENNEDY, J.

_____

**BRUNNER, J., concurring in judgment only.**

## I. INTRODUCTION

{¶ 47} The majority in this case affirms the judgment of the court of appeals, with the lead opinion stating that an unsigned arrest warrant is valid and not a violation of the Fourth Amendment to the United States Constitution if the surrounding circumstances show that a judge considered the underlying facts and found probable cause for the arrest. The lead opinion states that the good-faith exception need not be considered in this case. I agree with the lead opinion that the Fourth Amendment was not violated, and I agree fully with the lead opinion's determination that neither the exclusionary rule nor the good-faith exception are applicable. I concur in the majority's judgment, but because the arrest was accomplished in public, which may be done without a warrant, I would not address the validity of the warrant.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 48} I agree with the lead opinion's recitation of facts and history of the case, finding them to be well stated.

## III. CONSTITUTIONAL ANALYSIS

{¶ 49} The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 14 of the Ohio Constitution contains a nearly identical provision that is often considered to be coextensive with the Fourth Amendment. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123 ¶ 12, citing *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 940, ¶ 10, fn. 1. Thus, under the Ohio Constitution, "the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); and *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). The result of a constitutional violation is generally exclusion.[6] *See Wong Sun v. United States*, 371 U.S. 471, 487-488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

---

6. However, an exception may exist when an officer executes a search or seizure based on good-faith reliance on a facially valid warrant, *United States v. Leon*, 468 U.S. 897 , 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), on binding caselaw that is later found to be erroneous, *Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), on law that is later overruled, *Illinois v.*

{¶ 50} In this case, the defense sought to have excluded evidence that was obtained from the search incident to an arrest that was made based on probable cause established during a controlled buy of cocaine. A warrant for Harrison's arrest was sought based on that probable cause, but the reviewing judge did not actually sign the warrant—instead, the complaint to which the warrant was attached was stamped and initialed by the reviewing judge, indicating that a hearing was held and probable cause found. The lack of a signature from a judicial official on the warrant is essentially a red herring, in my view, because the question whether a warrant is valid is subsumed by whether the warrant was necessary in the first instance. Here, caselaw shows it was not necessary; hence, we need not wade into the waters of its validity.

{¶ 51} An officer may make a warrantless arrest in public for an offense committed in the officer's presence. *Atwater v. Lago Vista*, 532 U.S. 318, 328-345, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (discussing at length the historical basis of warrantless arrests for misdemeanor offenses that stop short of involving violence or threats of violence); *see also Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008). Moreover, under the federal and state Constitutions, there is no explicit requirement that an officer seek a warrant for a public arrest, even when the circumstances afford the officer the opportunity to do so. *State v. Jordan*, ___ Ohio St.3d ___, 2021-Ohio-3922, ___ N.E.3d ___, ¶ 2; *see also United States v. Watson*, 423 U.S. 411, 423-424, 96 S.Ct. 820, 46 L.Ed. 598 (1976); *State v. Brown*, 115 Ohio St. 3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66.

{¶ 52} In this case, Brent Joseph, a detective with the Logan County Sheriff's Office assigned to the county's Joint Drug Task Force, saw Harrison commit a felony on February 2, 2018, when he supervised a controlled drug buy using a confidential informant. Though he did not immediately arrest Harrison

---

*Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), or on a mistake of law, *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014).

(because of a desire to preserve the confidential informant's safety and his identity as an informant), Detective Joseph had probable cause to arrest Harrison. He relied not only on his own judgment that his witnessing the controlled drug buy constituted probable cause, but he tested that judgment twice—once when he applied for and received a GPS warrant to keep track of Harrison and again when he submitted a complaint, blank arrest warrant, and supporting affidavit to a judge who applied a "Probable Cause Found" stamp and her initials to the complaint. Without question, Detective Joseph had probable cause to arrest Harrison—a fact twice confirmed to him by neutral judges—and the arrest occurred in public. Hence, the arrest fully complied with both the federal and state Constitutions. This case is, above all, a suppression case and the primary question, therefore, is whether any defect in the arrest and search incident to arrest results in exclusion.

{¶ 53} The lead opinion does not address the fact that a warrant was not legally necessary, because it states that specific issue was not raised before the trial and appellate courts. The lead opinion states that the argument was not clearly presented until briefing before this court, which is a fair characterization,[7] and "[a]s a general rule, this court will not consider arguments that were not raised in the courts below." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993), citing *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524, 526 (1988). But it is also true that, "if we must resolve a legal issue that was not raised below in order to reach a legal issue that was raised, we will do so." *Id.*

{¶ 54} Here, the legal issue raised is whether Harrison's arrest, made with probable cause and in public but without a signed warrant, violated the United States and Ohio Constitutions, thus requiring exclusion. The parties have mostly

---

7. The issue was anticipated and argued by the defense in the trial court when the defense observed that arrests made in public based on probable cause are constitutional but that this arrest required a warrant given the length of time between the development of probable cause and the public arrest.

focused on the warrant's lack of a signature, but in order for that issue to be dispositive, a warrant would need to be constitutionally necessary in the first instance. It was not. *Jordan*, ___ Ohio St.3d ___, 2021-Ohio-3922, ___ N.E.3d ___, at ¶ 2. There is therefore no reason to address the validity of the arrest warrant at issue in this case, and I would decline to do so.

### IV.CONCLUSION

{¶ 55} Under the circumstances of this case, it is our duty to rightly apply the law. Once an issue is raised (here, the constitutionality of the arrest), even if no party correctly articulates what the law requires, and even if the lower court erred or failed to consider a relevant legal principle in analyzing the case, we must still follow where the law leads us—that is, after all, why we review legal issues de novo. *See, e.g.*, *Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 2019-Ohio-3231, 134 N.E.3d 1175, ¶ 26; *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100; *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, 867 N.E.2d 400, ¶ 12, fn. 4; *Rohde v. Farmer*, 23 Ohio St.2d 82, 89, 262 N.E.2d 685 (1970). Despite the defense's framing of the issue, we should first consider the necessity of a warrant before opining on its validity. Because the lead opinion does not, I concur in judgment only, for the reasons expressed in this opinion. I agree, however, with the lead opinion's conclusion that when a constitutional violation has not first been found, there is no reason to consider the good-faith exception to the exclusionary rule.

_____

**DEWINE, J., dissenting.**

{¶ 56} At a recent United States Supreme Court oral argument, Justice Alito posed this hypothetical to one of the advocates: an expert witness is asked "if a

centaur smokes five packs of cigarettes every day for 30 years, does the centaur run the risk of getting lung cancer? What would the medical expert say to that?"[8]

{¶ 57} Justice Alito's point was that the question asked of the doctor was difficult to answer because it rested on a faulty premise. This case presents a question of a similar ilk. We are asked to decide whether evidence obtained from Harrison's arrest on a public highway should be suppressed because there was no signature on a warrant that was issued for his arrest. But just as centaurs don't exist (at least as far as we know), there is no requirement for an arrest warrant when an arrest based on probable cause is made in a public place.

{¶ 58} Indisputably, the police did not need a warrant to carry out Harrison's arrest. As we recently reiterated, "This court has held, consistently with United States Supreme Court precedent, 'A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment' to the United States Constitution." *State v. Jordan*, ___ Ohio St.3d ___, 2021-Ohio-3922, ___ N.E.3d ___, ¶ 2, quoting *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66. Everyone agrees that there was probable cause for Harrison's arrest and that it happened on a public highway. Thus, regardless of the validity of the arrest warrant, Harrison was not subjected to an unlawful arrest. And because Harrison was lawfully arrested, the police were entitled to search his vehicle. *See Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008).

{¶ 59} But even though the validity of the arrest warrant did not affect the lawfulness of Harrison's arrest, the lead opinion undertakes to determine whether the (unnecessary) arrest warrant was valid. In doing so, it points out that the state

---

8. Supreme Court of the United States, Transcript of Oral Argument, *Thompson v. Clark*, No. 20-659 (Oct. 12, 2021), available at https://www.supremecourt.gov/oral_arguments/argument_transcript/2021 (accessed Nov. 30, 2021) [https://perma.cc/WKG6-8KU7].

failed to assert in the lower courts that an arrest warrant was not required. And it cites our longstanding rule that we do not decide issues that were not raised below. *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 1 ("It is * * * a familiar principle of law that a party who does not raise an issue in the trial court may not ordinarily raise that issue for the first time on appeal").

{¶ 60} I agree that we ought not decide issues that were not raised by the parties in the courts below. But I also think we ought to be cautious about deciding abstract issues that are divorced from the realities of particular cases. The ultimate issue presented by Harrison's suppression motion was whether his arrest was valid. Due to some questionable lawyering, though, what has been litigated in this case is whether Harrison's arrest warrant was valid. That's an issue that, on the facts in front of us, shouldn't matter. Even if we were to decide that Harrison's arrest warrant was invalid, that conclusion would not be sufficient to support exclusion of the evidence obtained as a result of Harrison's arrest. *See Virginia*.

{¶ 61} Furthermore, it is a long-standing principle that "[c]onstitutional judgments * * * are justified only out of the necessity of adjudicating rights in particular cases." *Broadrick v. Oklahoma*, 413 U.S. 601, 611, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), citing *Marbury v. Madison*, 5 U.S. 137, 178, 2 L.Ed. 60 (1803). To this end, courts traditionally "refus[e] to decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised before us by the parties." *Neese v. S. Ry. Co.*, 350 U.S. 77, 78, 76 S.Ct. 131, 100 L.Ed. 60 (1955) (per curiam).

{¶ 62} These considerations make this case a poor candidate for our review. I am always reluctant to exercise our authority to dismiss a case as improvidently allowed after the parties have presented briefing and oral argument. But, in my view, the unusual problems presented by the posture of this case make such a step appropriate. Doing so would leave in place the judgment of the court of appeals reversing the suppression motion—a judgment that was inarguably correct, though

perhaps arrived at on the wrong basis. In addition, to prevent further confusion, I would order that the court of appeals opinion not be cited except by the parties herein.

{¶ 63} Because I would dismiss this case as improvidently allowed, I respectfully dissent from the judgment of the majority.

KENNEDY, J., concurs in the foregoing opinion.

––––––––––––––––––––

Eric C. Stewart, Logan County Prosecuting Attorney, for appellee.

Triplett McFall Wolfe Law, L.L.C., Tina M. McFall, and Marc S. Triplett, for appellant.

––––––––––––––––––––