[Cite as *State v. Parrish*, 2023-Ohio-3356.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 111990 |
| v. | : | |
| CORTEZ PARRISH, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 21, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-662648-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl M. Felice, Assistant Prosecuting Attorney, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1} The state of Ohio appeals the trial court's judgment granting defendant-appellee, Cortez Parrish's ("Parrish") motion to suppress evidence. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 9, 2021, Parrish was indicted on Count 1, having weapons while under disability, a third-degree felony (F3), and Count 2 carrying concealed weapons, a fourth-degree felony (F4). On December 7, 2021, Parrish filed a motion to suppress evidence, which was heard on July 21, 2022.

{¶ 3} The state's sole witness was Patrol Officer Carolyn Field, ("Field") of the Cuyahoga Metropolitan Housing Authority Police Department. Field testified that on August 20, 2021, while patrolling Cedar Estates at approximately 11:23 p.m., she observed, from across the street, 15 or 20 men, including Parrish, participating in a dice game.

{¶ 4} Field called for backup and waited in her parked vehicle. Field testified that upon approaching the group with backup, the men scattered. Parrish, wearing a black shirt, was seen moving away from the group towards the basketball courts. Field stated Parrish was the focus of the investigation because he was part of the gambling group, he had his hand on his waistband, and he headed away from officers once he saw them. Field did not detain Parrish nor find any weapons. Parrish was detained by Officers Vidal and Jochum and placed in cuffs, while Field and other officers searched for weapons. The discovery of firearms along Parrish's route ultimately led to his arrest. Parrish was subsequently charged with having weapons while under disability and carrying concealed weapons. After Parrish was arrested, he admitted to Field that one gun belonged to him. Parrish filed a motion to suppress the weapons and his statements.

{¶ 5} The testimony revealed that Field initially implied guns were found on Parrish. Field later clarified that the guns were found on the side of a building, not on Parrish's person. The state attempted to introduce body-cam videos depicting statements made by Parrish once he was detained in handcuffs. Parrish objected to the portion of the videos containing incriminating statements.

> [Defense Attorney]: Your Honor, I would object to anything beyond this point being shown to the trier of fact as potentially prejudicial. From this point on, he just incriminates himself, I believe, and starts confessing to things, and it has nothing to do with why we're here for a motion to suppress.
>
> * * *
>
> The Court: All right. I'll sustain the objection.

(Tr. 24, 26.)

{¶ 6} The trial court granted Parrish's motion to suppress on September 22, 2022. The state appeals the trial court's judgment raising one assignment of error.

**Assignment of Error**

The trial court erred when it granted appellee's motion to suppress.

**Standard of Review and Crim.R. 12**

{¶ 7} An appellate review of a motion to suppress ruling involves a mixed question of fact and law. *State v. Harrison*, 166 Ohio St.3d 479, 2021-Ohio-4465, 187 N.E.3d 510, ¶ 11. A reviewing court must accept the trial court's findings of fact when they are supported by competent, credible evidence; however, questions of law are reviewed de novo without consideration of the lower court's legal conclusion. *Id.*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

When factual issues are involved in determining a motion, the court shall state its essential findings on the record. Crim.R. 12(F). When the essential findings of fact are absent, a reviewing court will affirm the trial court's ruling when there is sufficient evidence in the record demonstrating that the trial court's decision is justified. *Bedford v. McLeod*, 8th Dist. Cuyahoga No. 94649, 2011-Ohio-3380, ¶ 16.

{¶ 8} As a preliminary matter, it is undisputed that the trial court did not state its findings of fact on the record, as required by Crim.R. 12.(F). Also, the state failed to request essential findings of fact. Nonetheless, the state attempts to complain that there are no findings of fact from the trial court. A party cannot complain of a trial court's failure to state its findings pursuant to Crim.R. 12(F) when no request for such findings was made. *See State v. Miller,* 12th Dist. Butler No. CA86-09-134, 1987 Ohio App. LEXIS 9708, ¶ 12 (Nov. 23, 1987). The state's complaint of the trial court's noncompliance with Crim.R. 12(F) has not been preserved and will not be addressed. Moreover, the record can be reviewed to ascertain the facts.

{¶ 9} "[A] trial court's failure to provide its 'essential findings' on the record in a case may not be fatal to a review of the trial court's ruling on the motion when the record provides a sufficient basis to review appellant's assignments of error." *Bedford v. Clarke*, 8th Dist. Cuyahoga No. 95594, 2011-Ohio-941, ¶ 8, citing *State v. Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274, ¶ 16; *S. Euclid v. Njoku,* 2022-Ohio-4388, 203 N.E.3d 147, ¶ 47 (8th Dist.).

{¶ 10} The state argues the trial court granted the motion to suppress based on the court's mood as opposed to the reasonable articulable suspicion and probable cause standards. Upon review of the record, we find sufficient facts to conduct our analysis of the state's assignment of error.

Law and Analysis

{¶ 11} The Fourth Amendment to the Constitution of the United States and Section 14, Article, I, of the Constitution of Ohio, prohibit unreasonable searches of persons and seizure of their property. The Fourth Amendment declares:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. USCS Const. Amendment Four.

{¶ 12} Evidence obtained by the state in violation of the Fourth Amendment must be suppressed and prohibited from use by the state in its criminal prosecution of the person from whom it was seized, as the fruit of the poisonous tree. *State v. Boulis*, 8th Dist. Cuyahoga No. 86885, 2006-Ohio-3693, ¶ 22. The nature and quality of the intrusion on an individual's Fourth Amendment interests must be balanced against the governmental interests alleged to justify the intrusion. *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1, (1985). "The purpose of suppression is not to vindicate the rights of the accused person, who may very well have engaged in illegal conduct, but to deter the state from such acts in the future." *State v Stagger,* 8th Dist. Cuyahoga No. 85617, 2005-Ohio-4586, ¶ 11.

"Confirmation of the commission of an alleged criminal act by the detained person should not overshadow the purpose of suppression." *State v. Byrd*, 2022-Ohio-4635, 204 N.E.3d 681, ¶ 32 (8th Dist.).

{¶ 13} An individual's detention, without a warrant, must be based on reasonable and articulable suspicion that the person being detained is directly involved or about to engage in criminal activity. *State v. Jones*, 8th Dist. Cuyahoga No. 100300, 2014-Ohio-2763, ¶ 21. Here, Field testified that she initiated the investigatory stop of Parrish because he was part of a group of 15 or 20 men she believed were gambling. Field observed them gathered in a circle, crouching down one by one to throw what appeared to be dice and or money in the courtyard. Field could not remember if Parrish was running or walking toward the basketball courts after seeing officers but stated he headed away from officers while holding his side. Field said this was indicative of an individual carrying a weapon. As a result of this observation, Parrish became a subject of investigation.

{¶ 14} Interactions between police and individuals can fall into three distinct categories: 1) a consensual encounter, 2) an investigative detention, or 3) an arrest. *State v. Thomas*, 2d Dist. Montgomery No. 23979, 2011-Ohio-1292, ¶ 9. The state argues that Parrish was detained for an investigatory stop because Field suspected he was gambling.

{¶ 15} An investigative stop is a warrantless search and seizure that is violative of the Fourth Amendment and Ohio law unless it falls under one of the well-established exceptions. *See Katz v. United States*, 389 U.S. 347, 19 L.Ed.2d

576, 88 S.Ct. 507 (1967).  The exception for investigative stops is outlined in *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968).  Before making an investigatory stop, law enforcement must have an "articulable and reasonable suspicion" that the detained individual is engaged or about to engage in criminal activity.  *See Terry, supra.*  Reasonable suspicion to conduct a stop exists if there is at least a minimal level of objective justification for making the stop.  *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 12.  To possess a reasonable articulable suspicion of criminal activity, a "'police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant'" a search and seizure.  *State v. Bobo,* 37 Ohio St.3d 177, 181, 524 N.E.2d 489 (1988), quoting *Terry* at 21.  In the present case, the alleged criminal activity that was the subject of Parrish's detention was gambling, in violation of R.C. 2915.02(A)(2).  "No person shall * * * establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance."  Field testified that Parrish became the focus of the investigatory stop because she observed that Parrish was part of a large group of men that she believed were gambling.  The following exchange occurred:

> [Defense Attorney]:  If you see a group of — focus on this evening in question — of 15 to 20 black males and you observe that some of them may be gambling, does that give you a right to arrest all 15 to 20 of them?
>
> Field:  It gives you the right to detain them for further investigation.

[Defense Attorney]: That's your testimony? You believe that's the law?

Field: To then find out if there is more to the commission of the crime.

[Defense Attorney]: Commission of the gambling crime, right. So when you approached, you and the other officers approached the defendant, did you see any gambling paraphernalia?

Field: I did not detain him at first, no.

[Defense Attorney]: Did you see any dice?

Field: Again, I was not the first one to detain him.

{¶ 16} Given Field's testimony of her observations leading to Parrish's detainment, reasonable articulable suspicion was established for an investigatory stop for gambling. Now, our analysis requires additional evidence to justify further detainment and or arrest. The continued detention after the purpose for the original stop has ended constitutes an illegal seizure where there are no articulable facts that give rise to further suspicion of illegal activity. *State v. Robinette,* 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997). A thorough review of the record reveals Field observed Parrish holding his side as he was headed away from officers. She acknowledged that Parrish was doing nothing illegal as he headed toward the basketball courts. However, she could not remember if he walked or ran when officers approached. She did not note either in her report. If Parrish had run after seeing officers, while not illegal, running is one consideration justifying an investigatory stop under the totality of circumstances. *State v. Banks*, 10th Dist. Franklin No. 09AP-1087, 2010-Ohio-5714, ¶ 43-44. Field did not have any contact with Parrish until after the guns were found and Parrish was formally arrested for

the weapons charges. Field indeed had a reasonable belief that Parrish had a weapon because he was holding his side, but there is no articulable fact in the record that would create a reasonable suspicion that Parrish possessed an *illegal* weapon. Parrish's act of holding his waistband, without more, only justified a pat down for weapons so that the officers could conduct their investigation into gambling without fear of harm. It is well settled that "[t]he purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence* * *." *State v. Barcus*, 5th Dist. Licking No. 2022-Ohio-2491, ¶ 11. Field's testimony failed to clarify the circumstances under which the guns were found or how an investigation for gambling converted into an arrest for weapons offenses. Initially, Field testified that Parrish had marijuana and a Springfield XD handgun gun in his possession. On cross-examination, she admitted the guns were not in Parrish's possession, but were found on the side of a building. Since Field had no contact with Parrish until he was formally arrested, the record is devoid of any additional evidence to justify the gambling allegation and arrest. Additionally, neither the arresting officer nor the officer who found the weapons testified and Field could not articulate any facts that supported a reasonable suspicion that Parrish had committed a weapons crime.

{¶ 17} In *Glaspie*, the trial court's denial of a motion to suppress evidence was reversed because "there was no valid arrest preceding the search nor any recitation of facts that would draw the police action within the ring of protection against a claim of an unlawful search." *Cincinnati v. Glaspie*, 1st Dist. Hamilton No. C-74139,

1975 Ohio App. LEXIS 7556, 5 (Feb. 18, 1975). Although there were other officers involved, Field was the sole witness. Therefore, the recitation of facts leading up to Parrish's arrest is absent. There is no testimony that Parrish had any evidence of gambling on his person or weapons on him when he was detained. There is no testimony regarding how the guns were observed, secured, or linked directly to Parrish. Although there is a reference to a backpack, there was no evidence that Parrish was observed with a backpack. Yes, the body-cam verifies the presence of the guns. But the connection of Parrish to the guns is absent. We find that the state failed to meet its burden of articulating specific facts creating a reasonable suspicion that Parrish committed or was about to commit an arrestable offense, after his initial detainment. Under the totality of circumstances, there is insufficient evidence to support a reasonable suspicion to further pursue, search, or seize Parrish. "'[A]ll evidence obtained by searches and seizures in violation of the Constitution is * * * inadmissible * * *.'" *State v. Kiraly,* 8th Dist. Cuyahoga No. 92181, 2009-Ohio-4714, ¶ 26, quoting *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1865, 6L.Ed.2d 1081 (1961). Now, the state argues that the trial court erred as a matter of law when it failed to apply the appropriate legal standard in this case. In support of their argument, the state relies on the trial court's statement that it was "in a generous mood" when the court granted Parrish's motion to suppress. However, this statement was not made on the day testimony was taken. After hearing the evidence and taking the matter under advisement, the court reconvened on September 22, 2022, to announce its ruling. At that time, the trial court stated,

In any event, the court did hear testimony that day and has had more than ample time to reflect on it, and, you know, the court is in a generous mood. The court is going to grant the motion to suppress, All right?

**{¶ 18}** The state contends the statement demonstrates the trial court's failure to consider the "reasonable articulated suspicion standard." We find the state's argument unpersuasive. In response to the state's argument that the court's statement demonstrated a lack of consideration of the appropriate standard, we note that the record reflects the trial court's careful consideration of the appropriate legal standard.

**{¶ 19}** The court stated that it had ample time to reflect on the testimony. "[A] trial judge is presumed to know the applicable law and apply it accordingly." *State v. Thacker*, 4th Dist. Lawrence No. 04CA12, 2005-Ohio-1057, ¶ 19. More importantly, during the suppression hearing, the court asked questions that indicated considerations of the appropriate legal standard. During oral argument, the court considered arguments from the defense attorney concerning reasonable suspicion.

[Defense Attorney]: The length of time has nothing to do with the constitutionality of the suppression or the evidence that's found. It's whether or not there is reasonable suspicion of a crime is the only standard we're worried about here. So if the reasonable suspicion has not happened by the time he's been handcuffed, they can't develop it after the fact.

The Court: That's a good point.

(Tr. 26.)

{¶ 20} The state has failed to meet its burden. We find the record reveals that the trial court properly applied substantive law to the facts of this case. We further find the search and seizure of the weapons was in violation of Parrish's Fourth Amendment rights. As a result, the firearms are subject to exclusion under the fruit of the poisonous tree doctrine and must be suppressed.

{¶ 21} Finally, this lead opinion would be remiss if it failed to address the dissent opinion. The dissent opines the gun and statement were secured legally. However, it fails to identify how the prohibited evidence is drawn within the ring of protection against an unlawful seizure. The mere presence of the guns along the path, absent facts connecting Parrish to them, is insufficient to eliminate the protection against unreasonable searches. Notably, Field testified that Officers Vidal and Jochum arrested Parrish (tr. 36.) before she encountered him in the police car. Nonetheless, the dissent relies upon Parrish's post-arrest statement to establish probable cause. Otherwise, there is nothing to connect Parrish to the gun.

{¶ 22} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS IN JUDGMENT ONLY;
LISA B. FORBES, J., DISSENTS (WITH SEPARATE OPINION)

LISA B. FORBES, J., DISSENTING:

{¶ 23} I respectfully dissent from the lead opinion affirming the trial court's judgment entry granting Parrish's motion to suppress evidence. I agree with the lead opinion's conclusion that a "reasonable articulable suspicion was established for an investigatory stop" and detainment of Parrish. I further agree with the lead opinion's conclusion that the responding police officers "had a reasonable belief that Parrish had a weapon because he was holding his side * * *." However, while the lead opinion finds that the sole alleged criminal activity in this case was gambling, I would find that the CMHA officers involved in this case also had a reasonable, articulable suspicion that Parrish was carrying a concealed weapon,[1] which was illegal at the time of Parrish's detainment.[2]

_____

[1] The CMHA Complaint Summary, which Officer Field referred to as the "police report" at the suppression hearing, states that, on August 20, 2021, at 11:23 p.m., officers observed 15-20 people gambling. The report further states as follows: "[O]fficers observed a male later identified as * * * Parrish holding what appeared to be a heavy object in his waistband. Parrish observed officer presence and changed course of his direction and started running."

[2] Asked if it was "legal for a firearm to be carried in [the] manner" the officers suspected Parrish was carrying one, Officer Field testified, "At that time, no." Further the

{¶ 24} "Where a police officer, during an investigatory stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *State v. Bobo*, 37 Ohio St.3d 177, 181, 524 N.E.2d 489 (1988). This protective search is often referred to as a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Investigatory stops also allow the police to "detain the person briefly to investigate the circumstances that provoked the suspicion." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 13. "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and try to obtain information confirming or dispelling the officer's suspicions." *Id.* at ¶ 14.

{¶ 25} In the case at hand, Parrish's detainment was memorialized by body-camera footage from one of the officers who apprehended him, which was played at the suppression hearing. This footage clearly shows that the officers on scene asked Parrish, who was in handcuffs and being detained for suspicion of gambling and carrying a concealed weapon, what his name and social security number were. Immediately after Parrish gave the police his social security number, an officer said over the police radio, "Got the firearm" and "Got two and marijuana." The guns and marijuana were found on the ground approximately two minutes after the police detained Parrish. Officer Field testified that she "observed the [firearms and

---

CMHA Complaint Summary lists the "Primary Offense" for Parrish's arrest as "[R.C.] 2923.12(A) Offender carried or concealed weapon or ordnance."

marijuana] that were found on the side of the building through [Parrish's] path of travel." It is undisputed that the guns were not found on Parrish's person.

{¶ 26} A second body-camera video was presented at the suppression hearing. This video, which was timestamped approximately 13 minutes after the police recovered the firearms and marijuana, showed Officer Field informing Parrish of his *Miranda* rights while he was in the back of a police car. Officer Field testified that she interviewed Parrish after advising him of his rights. In this second video, Officer Field asked Parrish about the guns, inquiring "Are those yours, man? * * * The guns we found in your exact track * * * next to your weed?" Another police officer asked Parrish, "Which one is yours? The Glock or the other one?" Parrish responded, "XD9," which matches the description of the Springfield XD9 recovered from the scene.

{¶ 27} I disagree with the lead opinion's statement in this case that Officer "Field testified that Officers Vidal and Jochum arrested Parrish before she encountered him in the police car." Rather, Officer Field testified that Parrish "was placed under arrest after being *Mirandized* and after we located all of the firearms." Officer Field further testified about Parrish's arrest as follows:

Q: Officer Field, who arrested [Parrish] that night?

A: It would be Officer Vidal and Officer Jochum.

Q: Who *Mirandized* him?

A: I did.

[Videotape played in open court]

Q:  Did you hear an interaction between yourself and [Parrish]?

A:  Yes.

Q:  What were you doing?

A:  I was *Mirandizing* him.

Q:  What did you do after that?

A:  I then interviewed him after he was *Mirandized*.

{¶ 28} Other than Officer Field's testimony quoted above, there is nothing in the record regarding the precise timeline of Parrish's arrest.

{¶ 29} Furthermore, I also disagree with the lead opinion's statement that this dissent "relies upon Parrish's post-arrest statement to establish probable cause." Rather, this dissent concludes that, as officers were approaching Parrish to investigate suspected illegal gambling, a reasonable, articulable suspicion arose that Parrish was illegally carrying a concealed weapon. Approximately two minutes later, two weapons were found on the ground in Parrish's path of travel. The reasonable, articulable suspicion that Parrish was carrying a concealed weapon arose well before he voluntarily admitted that one of the weapons belonged to him.

{¶ 30} I would find that the investigatory stop and detainment of Parrish did not violate his Fourth Amendment right to be free from unreasonable searches and seizures. Police detained Parrish to investigate their reasonable articulable suspicion that Parrish had been gambling and carrying a concealed weapon. During this brief investigation, the police recovered two firearms on the ground within

Parrish's "path of travel." There is no evidence in the record that the police illegally prolonged the investigatory stop of Parrish. Therefore, I would reverse the trial court's decision to grant Parrish's motion to suppress evidence.