[Cite as *State v. Williams*, 2014-Ohio-4475.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100898**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TYRONE WILLIAMS

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574782-B

**BEFORE:**   Jones, J., Celebrezze, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**   October 9, 2014

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Steven N. Szelagiewicz
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Tyrone Williams appeals his convictions, rendered after a bench trial. We affirm in part and reverse in part.

## I. Procedural History and Facts

{¶2} In 2013, Williams was charged with kidnapping, two counts of felonious assault, improperly discharging a firearm into a habitation, aggravated burglary, criminal damaging, and having a weapon while under disability. The indictment included specifications for repeat violent offender and notices of prior conviction.

{¶3} At trial, Akeem Henson testified he was at his grandmother's house playing video games with some friends. Williams's stepdaughter, Kiyanna Ford, was at the house and had a relationship with Henson of which Williams did not approve.

{¶4} Ford left the house and sometime thereafter her older brother, Robert, knocked on the door and asked Henson to come outside to speak with him, which Henson did. Henson testified Robert said, "Man, I heard something about you." At that point, Williams came from around the side of the porch, and said, "I told you." Henson asked, "What are you talking about?" According to Henson, Williams put him in a headlock and hit him in the back of the head with a gun. The two men "tussled" and Williams hit him again before Henson "squirmed free and got him off." Henson ran down the street to another relative's house and called the police. He went to the hospital and received two staples to close the wound to his head.

{¶5} Henson testified he heard a gunshot while he was running away from his

grandmother's house but did not see Williams shoot the gun. When he returned to his grandmother's house later that evening, Henson saw that the glass in the front screen door was shattered and there was a bullet hole in an interior door.

{¶6} The police later showed Henson a photo array and he selected the man he thought was his assailant, but it turned out the person he chose was not Williams. Henson testified the photo looked different than Williams did in court. He told the trial court he was "100 percent sure" that Williams was the person who hit him in the head with a gun.

{¶7} Jeremy Lumpkin testified that he was at Henson's grandmother's house playing video games when Robert, whom Lumpkin knew, came over and asked to speak to Henson. He heard Robert tell Henson, "I need you to come outside to talk to you." After the two men went outside, Lumpkin heard a "tussle" and then saw Henson running down the street. Lumpkin testified he "[saw] a gun aiming at the door" and ran to hide behind the television. The "gun went off and it hit the glass and came in and the shot hit the door. That's when he walked in." Lumpkin identified the "he" as Williams, whom he also knew. Lumpkin stated that once in the house Williams said "the bulls* * * is over," before he started "flipping chairs" over.

{¶8} Lumpkin insisted Williams had a gun and he saw Williams with a gun before and after the shot was fired but he did not see Williams actually fire the gun because he, Lumpkin, was running to hide.

{¶9} Reginald McKay, Henson's cousin, was also at the house when Robert came over. Robert and Henson went outside to talk. McKay heard "bumping" on the

porch, looked outside, and saw Williams, who "came out of nowhere," walk up on the porch with a gun. According to McKay, Williams pointed the gun at the door. McKay ran back towards his grandmother's bedroom and heard two gunshots. McKay picked Williams out of a photo lineup and identified him as the man who shot into the house.

{¶10} Cleveland police officer Nikolai Przybylski testified that he responded to the scene and spoke with the homeowner, Mildred Hudson. Hudson told the officer she heard gunshots and breaking glass and called police. The victim, Akeem Henson, returned from the hospital when the officer was there and the officer noted a "small laceration to the rear left side of [Henson's] head." The officer also observed that the glass to the storm door was shattered and there was a bullet hole in a wooden interior door.

{¶11} Detective Philmore Evans testified that when he interviewed Williams, the suspect told him that Henson "was [having sex with] my daughter [Kiyanna]" and Williams was telling him not to or he would "get" Henson for "statutory [rape]."

{¶12} At the close of the state's evidence, the court dismissed one count of kidnapping and the aggravated burglary charge. The court then convicted Williams of one count each felonious assault with a one-year firearm specification and repeat violent offender specification; misdemeanor assault; improperly discharging a firearm into a habitation and having a weapon while under disability, with three-year firearm specifications; and, criminal damaging. The court sentenced Williams to a total of six years in prison.

## II. Assignments of Error

{¶13} Williams filed a timely notice of appeal and raises the following assignments of error for our review:

I. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal.

II. The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated appellant's state and federal rights to due process and protections against double jeopardy.

III. The convictions were against the manifest weight of the evidence.

IV. The admission of the unauthenticated pre-trial photographic array identification evidence at appellant's trial was plain error, an abuse of discretion and the result of ineffective assistance of counsel in violation of appellant's state constitutional rights.

V. The trial court erred by denying appellant's motion to dismiss for violation of his federal and state constitutional right to a speedy trial.

### III. Law and Analysis

**Sufficiency and Manifest Weight of the Evidence**

{¶14} In the first assignment of error, Williams argues that there was insufficient evidence to support his convictions. In the third assignment of error, he contends that they were against the manifest weight of the evidence. Although these assignments of error involve different legal standards, because the facts are the same for both, we will discuss them together.

{¶15} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where

the state's evidence is insufficient to sustain a conviction for the offense; Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶16} In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965 (1995).

{¶17} When reviewing a claim challenging the manifest weight of the evidence, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence is reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.* It is not the function of an appellate court to substitute its judgment for that of the trier of fact. *Jenks* at 279.

{¶18} Williams was convicted of violating R.C. 2903.11(A)(2), felonious assault, which provides, in part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous

ordnance." He was also convicted of assault, as defined by R.C. 2903.13, which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or another's unborn."

{¶19} The court also found Williams guilty of improperly discharging a firearm at or into a habitation as set forth in R.C. 2923.161(A)(1) and which states, in part, that "[n]o person, without privilege to do so, shall knowingly * * * [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual."

{¶20} Finally, Williams was convicted of criminal damaging, as defined by R.C. 2909.06(A)(1), which provides that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the person's consent * * * [k]nowingly, by any means * * * ."

{¶21} Williams argues that there was insufficient evidence to support his convictions because no one testified they saw him fire the gun; no weapon or bullet, bullet fragments, or shell casings were recovered; Henson never saw with what Williams allegedly hit him; Henson picked someone other than Williams out of the photo lineup; and the police did not arrest Williams until three months after the assault. We disagree and find that there was sufficient evidence to support Williams's convictions.

{¶22} Henson testified that he was mistaken in his identification at the police station, but was able to identify Williams, someone he knew, in court and testified he was "100 percent sure" it was Williams who had assaulted him. Henson testified that although he did not see Williams with a gun, he knew Williams hit him with a gun because he felt it "and it was metal. And afterwards when I came back [home], the door

at the bottom was shot and the glass was shattered and there was a bullet hole inside the home."

{¶23} Williams was seen by multiple eyewitnesses holding a gun both moments before the shot was fired and after it was fired. Both McKay and Lumpkin testified they saw Williams point a gun at the house, and heard gunshots immediately after they turned to run. McKay identified Williams in the photo lineup as the man who had a gun and came into the house. Officer Przybylski testified that the hole in the door was, in his opinion, a bullet hole. The homeowner testified that the hole in her door was not there before she heard gunshots that evening.

{¶24} Witnesses saw Williams brandishing a gun, and Henson testified that he was hit in the head with something hard and metal. Although no gun was recovered from Williams, his arrest was not made until three months after the assault and he therefore had plenty of time to dispose of the weapon.

{¶25} Williams further argues that several witnesses gave perjured testimony. He claims that Henson changed his story and Lumpkin's testimony was weak and inconsistent with McKay's account of events. But when this court considers a manifest weight challenge, we must remain mindful that the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact to assess, which was the trial court in this case. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to take into account any inconsistencies in the testimony, along with the witnesses' manner,

demeanor, gestures, and voice inflections, to determine whether the proffered testimony was credible. *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26; *see also State v. Lilliard*, 8th Dist. Cuyahoga Nos. 99382, 99383, and 99385, 2013-Ohio-4906, ¶ 93 (in considering the credibility of witnesses on a manifest weight challenge, an appellate court is "guided by the presumption" that the jury, or the trial court in a bench trial, is "'best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony,'" quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984)).

{¶26} Both McKay and Lumpkin testified that they heard commotion outside and saw Williams with a gun shortly thereafter. When they turned to run they heard a gunshot, the glass screen on the door shattered, and a bullet hole was left in an interior door. The fact that neither witness saw Williams pull the trigger of the gun is irrelevant because they both witnessed him holding a gun moments before a shot was fired at the house and McKay saw him with the gun when he came into the house immediately after the shot was fired.

{¶27} Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). We do not find that this is the exceptional case where the evidence weighs heavily against conviction. Therefore, Williams's convictions are not against the manifest weight of the evidence.

**{¶28}** The first and third assignments of error are overruled.

**Allied Offenses**

**{¶29}** In the second assignment of error, Williams claims that his conviction for felonious assault should have merged with his conviction for assault and his conviction for improperly discharging a firearm into a habitation should have merged with his criminal damaging conviction.

**{¶30}** Williams failed to object to the imposition of multiple sentences below and has therefore waived all but plain error. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). The Ohio Supreme Court has held that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 96-102.

**{¶31}** Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. R.C. 2941.25(A). Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his or her conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the defendant

may be convicted of all of them.    R.C. 2941.25(B).

**{¶32}** Thus, there is a two-part test to determine if offenses should be merged. First, the elements of the two crimes are compared.   *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 17,   citing *State v. Blankenship*, 38 Ohio St.3d 116, 117, 526 N.E.2d 816 (1988).   The elements of the two offenses were previously considered only in the abstract but are now compared in the factual context of the defendant's conduct.   *Id.* at ¶ 20; *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus.   If the crimes correspond to a sufficient degree, then crimes are allied offenses of similar import, and the court must proceed to the second step.   *See Williams* at *id.*

**{¶33}** In the second step, the defendant's conduct is reviewed, and only if the crimes were committed separately or there was a separate animus for each crime (or they are of dissimilar import under the first prong) can the defendant be sentenced for both. *Id.*   In reviewing a trial court's merger decision, the appellate court conducts a de novo review of the trial court's application of the law to the facts.   *Id.* at ¶ 27-29.

**{¶34}** Thus, as the reviewing court, we first determine "whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other." *Johnson* at ¶ 48.   "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, *i.e.*, 'a single act, committed with a single state of mind.'"   *Id.*, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149.   Due to the subjective nature of the analysis based on

the facts of each case, some crimes may be allied offenses in certain cases, but not in another case under a different set of facts. *Johnson* at ¶ 52.

{¶35} Williams argues that his convictions for felonious assault and assault were allied because there was only one victim of the assault, Henson. The state contends that there were other victims of the incident because Williams shot his gun into Mildred Hudson's house, thereby attempting to cause harm with a deadly weapon to the other people present in the home — McKay, Lumpkin, and Hudson.

{¶36} First, in analyzing felonious assault and assault offenses under *Johnson*, we find that they could be committed by the same conduct. Simple assault is a lesser included offense of felonious assault. *State v. Tolbert*, 60 Ohio St.3d 89, 92, 573 N.E.2d 617 (1991). It follows then that both offenses could be committed with the same conduct.

{¶37} Although the state's contention, in theory, is true, as indicted and convicted, the felonious assault and assault offenses are allied because the *only* victim listed in the indictment was Akeem Henson. Had the state listed any of the other people present in the house at the time of the shooting in the indictment, or made Crim.R. 7(D) motion before, during, or after trial to amend the indictment to conform to the evidence, the state's argument may have merit. But as it stands, the state's argument must fail.

{¶38} Williams was convicted of felonious assault, in that he knowingly caused or attempted to cause serious physical harm to Akeem Henson with a deadly weapon, a gun. The trial court also convicted him of assault, finding that he caused physical harm to Akeem Henson. Based on the record before us, we find that the charges arose from the

same conduct and Williams committed the felonious assault and assault against Akeem Henson with a single animus. As a result, the trial court committed plain error by not merging the two counts.

{¶39} Williams further contends that his convictions for improper discharge into a habitation and criminal damaging should merge as allied offenses, yet he offers no basis or authority for his claim. Notwithstanding this fact, we find that these two counts are also allied.

{¶40} Under the first prong of the *Johnson* test, we consider Williams's particular conduct and see that improper discharge into a habitation can be committed while criminal damaging is committed; therefore, the offenses are allied. In applying the second prong, we must determine whether Williams committed the improper discharge into a habitation offense separately or possessed an animus for shooting at or into the house that was separate from the animus he possessed in committing criminal damage.

{¶41} Animus means "purpose or, more properly, immediate motive" and can be inferred from the surrounding circumstances. *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). Although it is unclear why Williams shot into the house when the person he was upset with, Henson, had already run away, one can infer he wanted to damage the house that Henson lived in. Thus, he possessed the same animus for shooting in the house and for damaging the house by shooting into it and breaking the glass in the security door, putting a bullet hole in a wood door, and upending chairs.

{¶42} Finally, we find that the improper discharge into a habitation conviction does not merge into the felonious assault or assault convictions. The felonious

assault/assault against Henson was complete and Henson had already run away when Williams shot into the house. Thus, under the particular facts of this case, Williams had more than one animus when he shot into the house and damaged Mildred Hudson's property.

**{¶43}** Accordingly, the second assignment of error is sustained. We reverse the judgment of conviction on (1) the felonious assault and assault counts and (2) the improper discharge into a habitation and criminal damaging counts and (3) remand for a new sentencing hearing at which the state must elect which allied offense it will pursue against Williams. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at paragraphs one and two of the syllabus. But the determination of Williams's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing. *Id.* at paragraph three of the syllabus.

**Photo Lineup**

**{¶44}** In the fourth assignment of error, Williams argues that the use of the photo lineup prejudiced him, and because his counsel did not object to it or file a motion to suppress, he was afforded ineffective assistance of counsel.

**{¶45}** As an initial matter, we note that Williams chose to proceed pro se and counsel was there merely for standby purposes. In any event, in order to establish ineffective assistance of counsel, it must be demonstrated that counsel's performance fell below the objective standard of reasonable competence, and that there is a reasonable probability that, but for such deficiency, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984); *State v. Johnson*, 88 Ohio St.3d 95, 108, 723 N.E.2d 1054 (2000).

{¶46} In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court held that an identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process. In determining the admissibility of challenged identification testimony, a reviewing court applies a two-prong test: (1) did the defendant demonstrate that the identification procedure was unduly suggestive; and, if so, (2) whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 19; *see also State v. Thompson*, 8th Dist. Cuyahoga No. 90606, 2009-Ohio-615, ¶ 32, citing *State v. Page*, 8th Dist. Cuyahoga No. 84341, 2005-Ohio-1493.

{¶47} Upon review of the two photo arrays admitted into evidence, we do not find that they were unduly suggestive. McKay was shown a photo array in which he picked out Williams. Williams claims that McKay testified that Williams looked "different" from the other men in the lineup. But McKay did not testify as such. McKay testified that he only knew one person in the photo lineup and that person was Williams. When Williams questioned McKay about the hairstyle and skin color of the other men in the lineup, McKay opined that another man pictured had a hairstyle similar to Williams's and any difference in skin tone was probably due to the camera's flash.

{¶48} Henson viewed a different photo array. He testified that he picked someone other than Williams from the photo array, and, at the time he selected the other

person, was 99 percent sure the person he chose was who assaulted him. At trial, he stated he had been mistaken. Thus, it is likely that Williams was actually assisted, not prejudiced, by the admission of the photo lineups. Based on this, we also do not find that Williams received ineffective assistance of counsel before he chose to proceed pro se at trial.

{¶49} In light of the above, the fourth assignment of error is overruled.

**Speedy Trial**

{¶50} In the fifth assignment of error, Williams claims that his right to a speedy trial was violated.

{¶51} An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I, of the Ohio Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 32. These speedy trial rights are essentially equivalent. *State v. Butler*, 19 Ohio St.2d 55, 57, 249 N.E.2d 818 (1969). Ohio's speedy trial statutes, found in R.C. 2945.71 et seq., were implemented to enforce those constitutional guarantees. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996); *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 10.

{¶52} R.C. 2945.71(C)(2) requires a criminal defendant against whom a felony charge is pending to be brought to trial within 270 days from arrest. For purposes of computing time under R.C. 2945.71(C)(2), each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. *See* R.C. 2945.71(E). Consequently, "[a] felony defendant in Ohio must be tried within ninety

days if incarcerated on the pending charge or within two hundred seventy days if on bail."

*State v. Coleman*, 45 Ohio St.3d 298, 304, 544 N.E.2d 622 (1989). If the state violates a defendant's right to a speedy trial, then the court must dismiss the charges against the defendant. R.C. 2945.73(B). But "[i]f the defendant is in jail on a separate unrelated case, the three-for-one provision does not apply, and the speedy trial time is counted on a one-for-one basis." *State v. Pond*, 8th Dist. Cuyahoga No. 91061, 2009-Ohio-849, ¶ 14.

**{¶53}** The speedy trial statute may be tolled by several events, set forth in R.C. 2945.72, which provides, in pertinent part:

* * *

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

* * *

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

* * * .

**{¶54}** Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. *State v. Howard*, 79 Ohio App.3d 705, 607 N.E.2d 1121 (8th Dist.1992). At that point, the burden shifts to the state to demonstrate that sufficient

time was tolled pursuant to R.C. 2945.72. *State v. Geraldo*, 13 Ohio App.3d 27, 468 N.E.2d 328 (6th Dist.1983).

**{¶55}** Williams was arrested on May 23, 2013, and the time with which to bring him to trial began to run from that date; because Williams was in jail until trial, the state only had 90 days. As of the first pretrial, held on June 18, 2013, 26 days had run against the state. Williams requested a continuance until July 8; therefore, time would be tolled during that time period under R.C. 2945.72(H), and would remain at 26 days.

**{¶56}** On July 18, 2013, counsel for the defendant filed a motion to withdraw necessitating new counsel being appointed. Pretrials were continued at Williams's request on July 25, August 14, August 29, September 12, September 29, and October 3, 2013. Williams filed pro se motions on October 2 and 9, 2013.

**{¶57}** The court continued the October 9, 2013 trial date at Williams's request. He filed an additional pro se motion on October 15. The court denied his pro se motions on October 31. On November 15, Williams asked to proceed pro se but requested a specific attorney to serve as his "stand-by" counsel. As of November 15, 2013, an additional 15 days would count against the state, bringing the total to 41 days.

**{¶58}** Williams then filed numerous pro se motions. Trial was continued to December 16, 2013, the date when the specific attorney Williams requested was available. Trial was had on December 16, 2013.

**{¶59}** Williams contends that he did not consent to any continuances made by his appointed counsel, however, the Ohio Supreme Court has held that "[a] defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by

his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978), syllabus. Thus, the continuances, in addition to Williams decision to request new counsel and then to represent himself but ask for specific "stand-by" counsel, plus his numerous pro se motions, mean that no more than 41 out of 90 days of speedy trial time had expired. Simply put, as of the trial date, only 41 days of Williams's speedy trial time had been used.

{¶60} Because we find no statutory speedy-trial violation here, Williams's only other avenue is to demonstrate that the trial court and prosecution violated his constitutional speedy trial rights. *State v. Gaines*, 9th Dist. Lorain No. 00CA008298, 2004-Ohio-3407, ¶ 16. In order to determine whether a defendant sustained constitutional speedy trial violations, we balance four factors, which are the length of delay, the reason for the delay, the defendant's assertion of his or her right, and the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). But first, the defendant must make a threshold showing of a "presumptively prejudicial" delay to trigger application of the *Barker* analysis. *Doggett v. United States*, 505 U.S. 647, 650, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), citing *Barker* at 530-531; *State v. Miller*, 10th Dist. Franklin No. 04AP-285, 2005-Ohio-518, ¶ 11. Courts have generally found that a delay approaching one year becomes "presumptively prejudicial." *Doggett* at 652, fn. 1.

{¶61} The case at bar was pending for less than seven months. During that time, Williams switched attorneys before deciding to represent himself but asked for a specific

attorney to act as his stand-by counsel; requested and was granted continuances; and filed numerous pro se motions. Thus, Williams has not made the threshold showing that the delay was presumptively prejudicial and we find no constitutional violation of his speedy trial rights.

{¶62} In light of the above, Williams's statutory and constitutional speedy trial rights have not been violated. His fifth assignment of error is overruled.

## IV. Remand Instructions

{¶63} We reverse the judgment of conviction on (1) the felonious assault and assault counts and (2) the improper discharge into a habitation and criminal damaging counts and (3) remand for a new sentencing hearing at which the state must elect which allied offenses it will pursue against Williams.

{¶64} Judgment affirmed in part; reversed in part. Case remanded for proceedings consistent with this opinion.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR.,   JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR