[Cite as *S. Euclid v. Njoku*, 2022-Ohio-4388.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF SOUTH EUCLID,              :

    Plaintiff-Appellant,        :

                                               No. 111363

    v.                          :

INNOCENT NJOKU, JR.,              :

    Defendant-Appellee.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** December 8, 2022

---

Criminal Appeal from the South Euclid Municipal Court
Case No. CRB 2000621

---

### *Appearances:*

Michael Lograsso, South Euclid Law Director, and Brian M. Fallon, Assistant Prosecuting Attorney, *for appellant.*

Russell S. Bensing, David L. Grant, and James M. Kersey, *for appellee.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Plaintiff-appellant city of South Euclid ("the city"), appeals from the South Euclid Municipal Court's order dismissing defendant-appellee Innocent Njoku, Jr.'s ("Njoku") case for violation of Njoku's constitutionally and statutorily

protected speedy-trial right. After a thorough review of the record and law, we reverse and remand for further proceedings.

## I. Factual and Procedural History

{¶ 2} On November 8, 2020, Njoku was charged with domestic violence in violation of R.C. 2919.25(A). Two days later, an ex-parte hearing was held with the victim, and the trial court issued a temporary protection order. Njoku was arrested on November 19, 2020. That same day, Njoku was arraigned and posted bond.

{¶ 3} On December 2, 2020, Njoku moved the court to amend his protection order. In his motion, Njoku asked that the protection order be modified to allow him to remove his furniture from the location in which he previously lived with the victim. He alleged that the victim did not live at the location anymore, so "removal [would] not result in any direct or indirect contact between the parties." The record before us does not indicate that any action was taken on this motion by the court, but Njoku's counsel later indicated that this motion became moot.

{¶ 4} On October 16, 2020, before Njoku was even charged, Njoku's counsel requested discovery from the city. The city provided Njoku with discovery responses on December 4, 2020.

{¶ 5} On February 9, 2021, a virtual pretrial was held. The transcript of this event was not made part of the record before us, but the city indicates that at this hearing, Njoku stated that he would file a demand for a jury trial.

{¶ 6} On February 11, 2021, Njoku filed a demand for a trial by jury, noting that he did not waive his speedy-trial rights. The docket indicates that the trial court

set the matter for a virtual bench trial on March 9, 2021, but for reasons not supplied by either party, on March 24, 2021, the matter was reset for a jury trial on December 3, 2021.

{¶ 7} On March 31, 2021, Njoku notified the court that he served his reciprocal discovery responses to the city.

{¶ 8} On August 25, 2021, Njoku filed a motion to dismiss, alleging a violation of his speedy-trial right.

{¶ 9} On October 13, 2021, the court issued an order noting that

[o]n the courts on [sic] motion, all jury trial's [sic] scheduled for the months of October, November and December, will be rescheduled until the court can accommodate jury trial's [sic] consistent with CDC pandemic guidelines. The clerks office will send new dates to attorney's and defendant's [sic], who have successfully demanded a trial by jury.

{¶ 10} The jury trial was reset that same day for February 11, 2022.

{¶ 11} The trial court held a hearing on Njoku's motion to dismiss for speedy-trial violation on January 11, 2022. At this hearing, the following pertinent exchange took place:

[NJOKU'S COUNSEL]: * * * Cases are being tried throughout the County and surrounding areas. And they're being able to do it with appropriate safe guards. And Judge's [sic] are not precluded from doing that during this period of time.

Our client — and it's our belief that South Euclid ought to be able to do that. Again, with all due respect, your Honor.

THE COURT: * * * I'm gonna take judicial notice of your comment, but also point that from the time of the Governor's first issuance of the stay at home order till today's day, this Court still does not have any plexi glass barriers in place which I do find to be consistent with not only the CDC protocols, but also consistent with those that the Chief Justice of the Ohio Supreme Court indicated were necessary to reopen

the Ohio Supreme Court for in-person hearings and/or arguments at the building.

I'll also note that as we sit here today, right now, this Court actually has no chairs, no benches, no way to accommodate a jury box because the entire Court or the Courtroom area is currently under construction with challenging supply chain issues.

So, I do appreciate your position of what you believe the South Euclid — City of South Euclid and the South Euclid Municipal Court ought to be able to do, but I will note and I'll take judicial notice that there are some considerable impediments that do not readily allow us to accommodate those right now. And we would love to be able to do so, so that we can respond accordingly. But, please continue.

(Tr. 19-21.)

{¶ 12} On February 10, 2022, the day before trial was to commence, the trial court granted Njoku's motion to dismiss in a journal entry, which read:

This matter came before the Court on January 11, 2021 [sic], on the Defendant's Motion to Dismiss. Prosecutor for the City of South Euclid and Counsel for the Defendant presented argument. After due consideration, the Court finds the Defendant's Motion to Dismiss is well taken. The case is hereby dismissed with prejudice.

{¶ 13} The city filed a request for findings of fact and then a motion to reconsider. The court did not rule on the motion to reconsider, but instead issued a nunc pro tunc order reaffirming the dismissal, which read:

On a prior date, this matter came before this court on the Defendant's motion to dismiss the charge of domestic violence, a misdemeanor of the first degree, in the above captioned case, alleging the City violated the Defendant's right to speedy trial by not bring [sic] the case to trial within the statutory time.

The court granted the Defendant's motion to dismiss on or about February 10, 2022 and hereby issues a NUNC PRO TUNC opinion. After reviewing the information presented by the City in their response to the Defendant's motion to dismiss and the argument presented by the City at the oral hearing on the matter, in which the City largely

reiterated the argument from its brief, this court finds that the City presented not only a speedy trial calculation full of inaccuracies and miscalculations, but in fact presented nothing upon which this court could rely. The City's position was so inaccurate and void of valid, salient argument, that the court must rule in favor of the Defendant and grant the motion to dismiss. Further, and in light of the complete lack of any reliable argument by the City, after reviewing the pleadings submitted by the Defendant, the court finds that the Defendant's motion to dismiss is well taken and dismisses the City's complaint in the within matter, with prejudice.

{¶ 14} Nearly a week later, the trial court denied the city's motion to reconsider. The city appealed from the trial court's order granting Njoku's motion to dismiss, assigning two errors for our review.

1. The trial court erred when it failed to make findings of fact on a speedy trial motion which is a mixed question of law and fact.

2. The trial court erred when it granted the defendant's motion for a speedy trial violation as the tolling events due to defendant's actions, COVID protocols, and the trial court's own administrative orders were ignored by the trial court.

## II. Law and Analysis

{¶ 15} For ease of discussion, we address the city's second assignment of error first.

{¶ 16} In its second assignment of error, the city argues (1) that certain filings and discovery requests by Njoku tolled his speedy-trial clock, thus, the dismissal for a speedy-trial violation was improper under R.C. 2945.72(E), and (2) that the COVID-19 pandemic was a valid reason to delay jury trials and also served as a tolling event under R.C. 2945.72(H).

{¶ 17} A defendant is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States

Constitution and Article I, Section 10 of the Ohio Constitution. *See, e.g., State v. Williams*, 8th Dist. Cuyahoga No. 100898, 2014-Ohio-4475, ¶ 51, citing *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 32. R.C. 2945.71 was implemented "to incorporate the constitutional protection of the right to a speedy trial provided for in the Sixth Amendment to the United States Constitution and in Section 10, Article I, of the Ohio Constitution." *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996), citing *State v. Broughton*, 62 Ohio St.3d 253, 256, 581 N.E.2d 541 (1991).

{¶ 18} Ohio's statutory speedy-trial right imposes a duty on the prosecution to bring to trial a defendant who has not waived his speedy-trial right. R.C. 2945.71 et seq. applies to defendants, is mandatory, and must be strictly complied with by the trial court. *Cleveland v. Sheldon*, 8th Dist. Cuyahoga No. 82319, 2003-Ohio-6331, ¶ 16, citing *State v. Smith,* 140 Ohio App.3d 81, 86, 746 N.E.2d 678 (3d Dist.2000). Nonetheless, the prescribed times for trial set forth in R.C. 2945.71 are not absolute, and R.C. 2945.72 contains an exhaustive list of circumstances and events that extend the time within which a defendant must be brought to trial. *Cook* at 55-56, citing *State v. Wentworth*, 54 Ohio St.2d 171, 173, 375 N.E.2d 424 (1978). Pertinent to this case are R.C. 2945.72 subsections (E) and (H), which read:

> (E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
>
> * * *

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

{¶ 19} Finally, "'[a]lthough the right of the defendant to a speedy trial is one of constitutional proportions, there is an important countervailing interest that must be given weight in the balance of competing interests. It is the right of the people to require criminal defendants to stand trial for their alleged offenses.'" *Cleveland v. Gross*, 8th Dist. Cuyahoga No. 110669, 2022-Ohio-193, ¶ 7, quoting *Cook* at 59.

{¶ 20} "Appellate review of a trial court's decision on a motion to dismiss for a speedy trial violation raises a mixed question of law and fact." *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 22, citing *State v. Loder*, 8th Dist. Cuyahoga Nos. 93242 and 93865, 2010-Ohio-3085, ¶ 9, citing *State v. Easley,* 4th Dist. Scioto No. 03CA2910, 2005-Ohio-767, ¶ 6. The legal issues are reviewed under a de novo standard but great deference is given to the trial court's factual findings if the findings are supported by competent, credible evidence. *Burks* at *id.*, citing *Loder* at *id.* This court has previously described the procedure for establishing that a defendant's speedy-trial right has been violated:

> Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. *State v. Howard* (1992), 79 Ohio App.3d 705, 607 N.E.2d 1121. At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72.

*Rocky River v. Glodick*, 8th Dist. Cuyahoga No. 89302, 2007-Ohio-5705, ¶ 8, citing *State v. Geraldo*, 13 Ohio App.3d 27, 28, 468 N.E.2d 328 (6th Dist.1983).

{¶ 21} Njoku was charged with domestic violence, a first-degree misdemeanor. Pursuant to R.C. 2945.71(B)(2), the city had 90 days to bring Njoku to trial.

{¶ 22} Njoku argues that he was required to be brought to trial by March 4, 2021, starting from the date of his arrest on November 19, 2019. Njoku suggests that his request for discovery was the only tolling event, and that once the city responded to the discovery request on December 4, 2020, his speedy-trial clock was tolled until December 4, 2020. Since 90 days from December 4, 2020, is March 4, 2021, Njoku asserts that his speedy-trial right was violated because he was not brought to trial by this time. Njoku therefore established a prima facie case for dismissal. The city thus must establish that sufficient time was tolled pursuant to any of the tolling events enumerated in R.C. 2945.72.

{¶ 23} In response, the city asserts that Njoku's discovery request was not the only event that tolled the speedy-trial clock, citing Njoku's reciprocal discovery, Njoku's request to amend the protection order, the COVID-19 pandemic's effect on the South Euclid Municipal Court, and Njoku's motion to dismiss for violation of his speedy-trial right.

{¶ 24} Both the city and Njoku agree that Njoku's speedy-trial clock began on November 19, 2020, the date that he was arrested, arraigned, and posted bail. However, Njoku requested discovery before he was even charged, on October 16, 2020. "'[T]he most sensible interpretation of R.C. 2945.72(E) is that when a defendant requests discovery, the request operates as a tolling event.'" *State v.*

*Belville*, Slip Opinion No. 2022-Ohio-3879, at ¶ 19, quoting *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶ 23. Neither party disputes that the city timely responded to the discovery request on December 4, 2020, and that from November 19, 2020, through December 4, 2020, Njoku's speedy-trial time was tolled for a total of 15 days.

{¶ 25} The city contends that another tolling event occurred on December 2, 2020, when Njoku moved the court to amend the protection order. Njoku responds that R.C. 2945.72(E) extends the speedy-trial clock only when the motion causes delay in the proceedings. Neither party has provided any authority or caselaw upon which we can rely. Nonetheless, we are required to construe any ambiguities in favor of the accused. *State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 8, citing *State v. Johnson*, 8th Dist. Cuyahoga Nos. 78097, 78098, and 78099, 2001 Ohio App. LEXIS 999, 6 (Mar. 8, 2001). "'R.C. 2945.72(E) implicitly recognizes that when a motion is filed by a defendant, there is a 'period of delay necessitated' — at the very least, for a reasonable time until the motion is responded to and ruled upon.'" *Belville* at ¶ 20, quoting *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 26. However, whether a motion causes a delay requires an analysis of cause and effect. *In re D.S.*, 8th Dist. Cuyahoga No. 97757, 2012-Ohio-2213, ¶ 35, citing *State v. Owens*, 2d Dist. Montgomery No. 13054, 1992 Ohio App. LEXIS 3332, 6 (June 26, 1992). Because there is no evidence in the record indicating that the motion to amend the protection order caused any delay to either party in bringing Njoku to trial, we are constrained to accept Njoku's argument that

this was not the type of motion that tolled the speedy-trial clock. The substance of Njoku's motion to amend the protection order dealt solely with the issue of retrieving his furniture and did not have any effect on his or the city's ability to timely prepare for trial. Accordingly, this motion did not toll Njoku's speedy-trial clock.

{¶ 26} The next tolling event that the city points to is the fact that Njoku failed to serve reciprocal discovery responses on the city until March 31, 2021. The city argues that the clock was tolled from the time that both parties agreed that Njoku's speedy-trial clock began, on November 19, 2020, through March 31, 2021, when Njoku served reciprocal responses. Njoku does not offer an argument in rebuttal.

{¶ 27} Under Crim.R. 16(H), "[i]f the defendant serves a written demand for discovery or any other pleading seeking disclosure of evidence on the prosecuting attorney, a reciprocal duty of disclosure arises without further demand from the state." This "automatic" reciprocal duty was added to the statute in 2016. Prior to the amendment, the Ohio Supreme Court held that "a defendant's failure to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 24. We find that *Palmer* is still applicable despite the fact that the statute no longer requires the prosecution to serve a written request.

{¶ 28} The parties agree that Njoku's speedy-trial right first arose on November 19, 2020, despite requesting discovery before he was charged. Njoku did

not address the automatic, reciprocal discovery request until March 31, 2021, which means that 132 days elapsed before Njoku responded to discovery after his speedy-trial right arose. This court has repeatedly determined that in most circumstances, 30 days is typically a "reasonable" time to respond to discovery. *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 26, citing *State v. Byrd*, 8th Dist. Cuyahoga No. 91433, 2009-Ohio-3283, ¶ 9; *State v. Barb*, 8th Dist. Cuyahoga No. 90768, 2008-Ohio-5877, ¶ 9; *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26. Finding no argument explaining or justifying the 132 days, we find that only 30 days of Njoku's response time was reasonable. Therefore, Njoku's speedy-trial clock was tolled for an additional 102 days (132 minus 30).

{¶ 29} The city also asserts that the COVID-19 pandemic's effect on the South Euclid Municipal Court was a valid tolling event. In support of this, the city cites (1) the Ohio Attorney General Opinion No. 2020-002; (2) the fact that South Euclid City Hall was closed to the public from March 20, 2020 onward; and (3) the South Euclid Municipal Court's administrative order from September 2020.[1] Njoku only responds that "House Bill 197," signed by Governor DeWine, expired on July 30, 2020, four months before Njoku was even arrested. House Bill 197 does not appear to be cited by the city on appeal, but Njoku claims that this was the only valid

---

[1] The order itself is dated September 21, 2020. The bottom of the order indicates that it was journalized on September 18, 2020. For these reasons, we will refer to this order throughout as the "September 2020 order."

COVID-19 related tolling event, and that it expired prior to the commencement of this case. We disagree.

{¶ 30} The Ohio Supreme Court has found that COVID-19 related orders and continuances tolling trials are permissible pursuant to R.C. 2945.72(H), which provides that speedy-trial time may be extended by "the period of any reasonable continuance granted other than upon the accused's own motion" and that pandemic related continuances are "reasonable."[2] *State v. Lynum* (*In re Disqualification of Fleegle*), 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609, ¶ 7. "In *Fleegle*, the Ohio Supreme Court held that trial judges have the authority to continue trials for defendants on a case-by-case basis without violating speedy-trial requirements and continuing a trial because of a pandemic state of emergency is reasonable under R.C. 2945.72(H)." *State v. Jones*, 8th Dist. Cuyahoga No. 110081, 2021-Ohio-3359, ¶ 12, citing *Fleegle* at *id.* Nearly a year after *Fleegle* was decided, the Ohio Supreme Court reiterated *Fleegle's* holding, stating that "we are at a different stage of the pandemic than when *Fleegle* was decided" but "we are not yet out of the woods, judges should continue to ensure that scrupulous safety practices are followed for all in-person hearings." *In re Bickerton*, 163 Ohio St.3d 1268, 2021-Ohio-1266, 169 N.E.3d 704, ¶ 7. Even now, in 2022, the Ohio Supreme Court maintains that *Fleegle*

---

[2] The Supreme Court adopted this holding pursuant to Attorney General Opinion 2020-002, in which the Attorney General advised that R.C. 2941.71(H) "permits prosecutors to seek, and courts to grant, reasonable continuances" and that the pandemic emergency provides a "reasonable" basis for continuance without violating a defendant's speedy-trial right. The city cited this opinion as a basis for the reasonableness of COVID-19 related speedy-trial tolling.

remains applicable, noting that "the chief justice has stated that trial judges have the authority to grant continuances 'on a case-by-case basis without violating speedy-trial requirements.'" *State v. Drain*, Slip Opinion No. 2022-Ohio-3697, ¶ 54, quoting *Fleegle* at ¶ 7.

{¶ 31} In addition to the Ohio Supreme Court, this court has repeatedly upheld numerous continuances by trial courts for COVID-19 related reasons and determined that COVID-19 related continuances toll a defendant's speedy-trial clock.

{¶ 32} In *State v. Tuttle*, 8th Dist. Cuyahoga No. 110508, 2022-Ohio-303, we reversed and remanded the trial court's dismissal on speedy-trial grounds, finding that the COVID-19 pandemic presented a reasonable circumstance under which a defendant's speedy-trial time could be tolled. In *Tuttle*, the trial court issued numerous administrative orders suspending jury trials until about September 2020 when jury trials began to proceed in a "triage" fashion, prioritizing defendants who were incarcerated. *Id.* at ¶ 30. This court determined that the trial court's suspension of jury trials to prevent the spread of COVID-19 was reasonable and that the time would not be counted against the state. *Id.* at ¶ 31.

{¶ 33} In *Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, this court held that a trial court's sua sponte suspension of all jury trials between January 14, 2021, and May 2, 2021, was reasonable pursuant to R.C. 2945.72(H) due to the challenges presented by the COVID-19 pandemic. *Id.* at ¶ 92.

{¶ 34} In *State v. Quinn*, 8th Dist. Cuyahoga No. 110692, 2022-Ohio-2038, defendant Quinn was arrested in May 2019 and his trial did not begin until May 2021. While this court noted several continuances and delays by the defendant himself, including Quinn's own waiver of speedy trial from September 2020 through January 2021, this court ultimately noted that the trial court's multiple continuances occurring after January 2021 due to COVID-19 concerns were reasonable. *Id.* at ¶ 36 ("We acknowledge that a two-year delay between arrest and trial is lengthy. However, we cannot say that it is excessive in light of the Covid-19 pandemic that has affected and essentially delayed everyone's life starting in the spring of 2020.").

{¶ 35} In *In re C.C.*, 2022-Ohio-2264, 192 N.E.3d 1203 (8th Dist.), the Cuyahoga County Juvenile Court, in March 2021, issued an order continuing a juvenile's matter "indefinitely" until more guidance was received from the Cuyahoga County General Division. *Id.* at ¶ 11. Ultimately, the trial court dismissed C.C.'s case for violating C.C.'s speedy-trial right, refusing to take into account the tolling orders pertaining to COVID-19. In rejecting the trial court's refusal to toll speedy-trial on COVID-19 grounds, this court reasoned "[w]hile this court understands that the visiting judge took exception to the juvenile court's previous failures to expedite the SYO proceedings, we find the county-wide suspension of jury trials was necessary and applicable to the speedy-trial time implicated in this matter." *Id.* at ¶ 37. This court further noted that "[a]lthough the continuance prompted further inaction by the state * * * we find no basis to ignore the application of clear tolling provisions." *Id.*

{¶ 36} The South Euclid Municipal Court's September 2020 administrative order, which was attached to the city's response to Njoku's motion to dismiss pertinently noted that:

> 6. Jury Trials: Jury Trials not subject to Speedy Trial violations shall be rescheduled to [sic] further notice by the Court.

Despite this clear exception of instances where speedy-trial rights are at issue, the remainder of paragraph 6 reads:

> Until such time that the South Euclid Municipal Court is assured that the South Euclid Municipal Complex has become a suitable environment to protect the health and safety of the public, jurors, litigants, attorneys and court staff during this pandemic. Whereas, currently, the South Euclid Municipal Complex fails to provide any six feet markings to promote proper social distancing, hand sanitizing stations at all entrances into the building, temperature checks for entrants or in the alternative a thermometer for entering parties to conduct said checks personally, emergency disposable face masks for the public and a consistently enforced mask policy for City employees while in the Municipal building. For these reasons, this Court finds the Municipal Complex to be at increased risk of COVID-19 virus transmission and ill-suited for public visitation.

{¶ 37} While the initial text of paragraph 6 indicates that the order was not intended to toll the speedy-trial clock, a complete reading of the order indicates otherwise. The order also notes that:

> The Ohio Supreme Court's Guidance to Courts throughout Ohio regarding COVID-19 issued on May 18, 2020 remains largely valid with the noted modifications as adopted in this Order. Consistent with said guidance, this court finds it necessary to exercise caution as it relates to those who are required to participate in in-person court appearances. The Ohio Supreme Court has instructed Ohio courts to only require personal court appearances in cases of immediate need. To facilitate this goal, ensure litigant accountability, provide a safe courthouse environment and decrease incidences where litigants have failed to appear as required, this court shall utilize technology and conduct

virtual hearings for all proceedings except otherwise specified and until such time where this Order is terminated.

{¶ 38} Further, the trial court's own comments during the January 2022 hearing indicate that a jury trial was not possible due to circumstances caused by the COVID-19 pandemic that were out of the trial court's control. Among the reasons cited in the September 2020 order, the trial court cited ongoing construction in the courtroom which was delayed due to COVID-19 related supply chain delays.

{¶ 39} "The record of the trial court must in some manner affirmatively demonstrate that a sua sponte continuance by the court was reasonable in light of its necessity or purpose." *State v. Lee*, 48 Ohio St.2d 208, 209, 357 N.E.2d 1095 (1976). Pursuant to the Supreme Court and this court's precedent, we find that the trial court's inability to hold a trial due to safety and supply chain concerns related to COVID-19 was reasonable. The record demonstrates that from the time Njoku was charged until the motion to dismiss hearing was held in January 2022, the South Euclid Municipal Court was unable to conduct jury trials. These complications arising from the COVID-19 pandemic clearly constituted a tolling event. It is unclear from the trial court's nunc pro tunc entry whether this was considered in its calculation, but its own administrative order and admissions during the January 2022 hearing overwhelmingly relay the difficulties and tribulations that the South Euclid Municipal Court faced in holding jury trials.

{¶ 40} In addition to the trial court's clear inability to hold a trial due to COVID-19 concerns that began in September 2020 and were still ongoing by January 2022, the city points out that Njoku's motion to dismiss constituted an additional tolling event. "A motion to dismiss tolls the time in which a defendant must be tried." *Sheldon*, 8th Dist. Cuyahoga No. 82319, 2003-Ohio-6331, at ¶ 22, citing *State v. Bickerstaff*, 10 Ohio St.3d 62, 67, 461 N.E.2d 892 (1984). Njoku's motion to dismiss was filed on August 25, 2021, while the September 2020 administrative order was in effect, and the court did not rule on it until February 10, 2022. Accordingly, Njoku's case was tolled for another 169 days.

{¶ 41} We also find that several of the days were tolled by Njoku's doing, and the city did not engage in any practices or request any continuances that delayed the case at all. Pursuant to *Fleegle*, the trial court is, and was, in the best position to determine whether or not a jury trial could safely and effectively be held, and the record plainly reflects that the trial court felt that it was unable to proceed with a jury trial.

{¶ 42} We are further persuaded by the fact that the speedy-trial right is designed """to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.""" (Emphasis deleted.) *State v. Azbell*, 112 Ohio St.3d 300, 2006-Ohio-6552, 859 N.E.2d 532, ¶ 18, quoting *State v.*

*Triplett,* 78 Ohio St.3d 566, 568, 679 N.E.2d 290 (1997), quoting *United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

{¶ 43} On appeal, Njoku did not make any showing that this delay, primarily caused by an unprecedented pandemic that was out of the city's control, infringed on his liberties or caused any prejudice. During the January 2022 proceeding, Njoku's attorney noted that "Mr. Njoku has been unable to move on with his job. He's a doctor at the Clinic. He can't move on with other opportunities. He very much wants the opportunity to vindicate himself in this particular case." (Tr. 22.) However, this was the only time any prejudice to Njoku was introduced; this point was not argued in Njoku's motion to dismiss nor on appeal; and this comment standing alone does not allow us to properly discern the exact, material prejudices that Njoku has suffered.

{¶ 44} Our review of this matter reveals that the trial court's September 2020 administrative order constituted a reasonable tolling event. Further, we agree that several of Njoku's own actions discussed herein were valid tolling events. The trial court's nunc pro tunc entry does not contain competent, credible evidence indicating to us whether or not any of these tolling events were considered in the trial court's decision to dismiss this matter. Our review indicates that all of the tolling events discussed herein were reasonable and the trial court erred in not considering them before dismissing the case. We find that Njoku still had time on his speedy-trial clock at the time this matter was dismissed. We therefore sustain the city's second assignment of error.

{¶ 45} Because of our resolution of the city's second assignment of error, we will only briefly address the city's first.  In its first assignment of error, the city contends that it was reversible error for the trial court to fail to issue findings of fact in dismissing this matter on speedy-trial grounds.

{¶ 46} The city directs us to Crim.R. 12(C) and (F), arguing that the trial court was required to state its factual findings in granting Njoku's motion to dismiss.  We do not find any persuasive authority in Crim.R. 12(C), but note that Crim.R. 12(F) states that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."

{¶ 47} Despite the statute's use of the word "shall," this court has found that "a trial court's failure to provide its 'essential findings' on the record in a case may not be fatal to a review of the trial court's ruling on the motion when the record provides a sufficient basis to review appellant's assignments of error."  *Bedford v. Clarke*, 8th Dist. Cuyahoga No. 95594, 2011-Ohio-941, ¶ 8, citing *State v. Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274, ¶ 16.  In the instant matter, the record allowed us to effectively determine why the trial court was unable to hold a jury trial.  It was clear from the administrative orders and the trial court's own words during the January 2022 hearing that the COVID-19 pandemic was the reason for delaying Njoku's jury trial.  The record also enabled us to determine which "events" acted as tolling events in Njoku's case.  We therefore overrule the city's first assignment of error.

### III. Conclusion

{¶ 48} The trial court erred in dismissing Njoku's case by failing to consider valid tolling events in its calculations, including its own administrative order detailing that no in-person hearings or trials could occur due to complications posed by the COVID-19 pandemic.

{¶ 49} The trial court's dismissal is reversed, and this matter remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
CORNELIUS J. O'SULLIVAN, JR., J., DISSENTS WITH SEPARATE OPINION

CORNELIUS J. O'SULLIVAN, JR., J., DISSENTING:

{¶ 50} I respectfully dissent and would affirm the trial court's judgment granting defendant-appellee's motion to dismiss due to the fact that he was denied his constitutional right to a speedy trial.

{¶ 51} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Ohio's speedy-trial statute, R.C. 2945.71, "was implemented to incorporate the constitutional protection of the right to a speedy trial." *Cook*, 75 Ohio St.3d at 55, 661 N.E.2d 706. Accordingly, the speedy-trial statutes must be strictly construed against the government. *Id.*

{¶ 52} Upon my review, appellee's speedy-trial time was tolled, at the latest, until March 31, 2021, when appellee provided his discovery to appellant, the city of South Euclid. I do not believe that any other tolling events occurred after March 2021. Given speedy-trial mandates, appellee should have been brought to trial in the summer of 2021.

{¶ 53} I am wholly unpersuaded by the trial court's initial purported explanation, which the majority now adopts, of the COVID-19 pandemic and lack of space in the courthouse as reasons for the delay. The Ohio Governor's pandemic-related orders expired in June 2020. The Ohio Supreme Court awarded funds and services to multiple courts who advised them that the pandemic presented hardships. There were challenges in holding trials and hearings, but they were not insurmountable. By June 2020, trials and hearings were routinely held across the nation using various software programs such as Zoom and Microsoft Teams. Free training and software were widely available. Ohio's Civil and Criminal Rules of Procedure were adapted so that courts could avail themselves of various video and audio capabilities.

{¶ 54} The Cuyahoga County Court of Common Pleas reopened in the summer of 2020. This court never ceased its operations, even during the initial stages of the pandemic; rather, it expeditiously transferred to remote operations. Indeed, just a few miles away from the South Euclid Municipal Court, in Lake County, in-person trials and hearings went forward throughout the entirety of 2020-2021.

{¶ 55} Appellee's claim of prejudice is well founded. He is a medical doctor, and the charges against him would interfere with his ability to secure employment, maintain his licensing, and obtain professional liability insurance. The alleged victim is also prejudiced by not having this matter settled in a timely manner. These were very serious allegations against the appellee. Both the alleged victim and the alleged perpetrator deserved to have their day in court. While federal and state courts across the nation adapted to the challenges of the global pandemic, and limited shutdowns ended in May of 2020, there is no evidence that the South Euclid Municipal Court took any measures to ensure justice to the community is it sworn to serve. In spite of significant resources allocated to the justice system by the federal and state government, and our own Ohio Supreme Court, the municipal court here was apparently closed for more than a year.

{¶ 56} Appellee found himself facing significant criminal allegations. The prosecutor and appellee's defense counsel appear to have worked together to attempt to bring this matter to the attention of the trial court. I believe the trial court acted with gross incompetence by allowing the COVID-19 pandemic to evidently

close the court for more than a year.  The only thing the trial court did correctly was dismiss the charges due to its own speedy-trial violation.  I would affirm the judgment granting appellee's motion to dismiss.  I therefore dissent.